USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/24/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :
  SHARON MAHN,                                            :
                                                          :
                                        Plaintiff,        :            1:24-cv-8326-GHW
                           -against-                      :
                                                          :            MEMORANDUM OPINION &
  ALLEGIS GROUP, INC., *et al.*,                          :                    ORDER
                                                          :
                                       Defendants.        :
                                                          :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

　　This action is the latest in a fifteen-year-long series of disputes between Plaintiff Sharon

Mahn ("Plaintiff") and Defendants Major, Lindsey, & Africa LLC ("MLA") and Allegis Group, Inc.

("Allegis," and together with MLA, "Defendants").  Plaintiff worked for MLA as a legal recruiter

until 2009, when MLA terminated her for allegedly misappropriating confidential information about

MLA's clients and selling that information to its competitors.  Plaintiff and MLA disputed the

termination in various forums for the next nine years—first in federal court, then in arbitration, then

in various New York state courts—culminating finally in a multi-million-dollar judgment against

Plaintiff for misappropriation of MLA's confidential information and trade secrets.

　　As it turned out, that was only chapter one.  The parties engaged in another four years of

post-judgment-enforcement proceedings in New York state court.  Before those concluded, Plaintiff

petitioned for Chapter 7 bankruptcy.  One year later, Plaintiff's trustee in bankruptcy sued MLA and

several of its employees in New York state court for an alleged sexual assault that occurred while

Plaintiff was still working at MLA in 2006.  MLA moved to compel the arbitration of those claims,

and the following year, filed an action in bankruptcy court to prevent the discharge in bankruptcy of

Plaintiff's debt to MLA under the judgment.  MLA's motion to compel was granted and affirmed on

appeal.  Its action to prevent the discharge of Plaintiff's debt is currently in discovery.

This action is chapter three.  Plaintiff here alleges that Defendants defamed her in an article discussing her sexual assault action, as well as in their legal briefs in state and bankruptcy court.  Plaintiff also brings claims for abuse of process, negligent infliction of emotional distress, and intentional infliction of emotional distress, all arising from Defendants' alleged "lawfare" and defamatory statements over the course of the parties' various disputes.

Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Plaintiff's complaint fails to state a claim for defamation because Defendants' alleged statements were either substantially true, privileged from suit, or both.  It fails to state a claim for abuse of process because Defendants are not alleged to have done more than issue lawful writs for legitimate purposes.  It fails to state a claim for negligent and intentional infliction of emotional distress because, among other things, those claims are predicated on the same non-actionable conduct as her other causes of action.  Accordingly, Defendants' motion to dismiss Plaintiff's complaint is GRANTED.

## I.    BACKGROUND[1]

### A.  The Parties

MLA is a legal-recruitment firm.  *See* Dkt. No. 24 ¶¶ 14, 185 ("Amended Complaint" or "FAC").  It helps attorneys find jobs.  *See id.* ¶ 85.  Allegis is MLA's parent company.  *See id.* ¶¶ 68, 141.

Plaintiff worked for MLA as a legal recruiter from 2005 until she was terminated in November 2009.  *See* FAC ¶ 185; Dkt. No. 32 at 3 ("Memorandum").  MLA terminated her for allegedly sharing information concerning MLA's attorney-candidates with other legal recruiters.  *See*

---

[1] Unless otherwise indicated, the facts are drawn from the Amended Complaint, Dkt. No. 24, and are accepted as true for the purposes of this motion.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

FAC ¶¶ 186, 188.

### B.  The Underlying Proceedings

On May 26, 2010, MLA filed an action in this court against Plaintiff and two of MLA's competitors, alleging, among other things, that Plaintiff had disclosed MLA's proprietary information to its competitors while she was employed at MLA. *Major, Lindsey & Afr., LLC v. Mahn*, No. 10-cv-4239 (CM), Dkt. No. 46 at 1–4 (McMahon, J.) (the "2010 Action").[2]  MLA sought only injunctive relief against Plaintiff, as "[p]ursuant to [Plaintiff's] employment agreement, all of MLA's claims for monetary damages [were] subject to arbitration." *Id.* at 2.  On September 7, 2010, the Honorable Colleen McMahon dismissed MLA's claim against Plaintiff under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and sustained MLA's other claims against her. *Id.* at 1–2.  On September 10, 2010, MLA dismissed its claims against Plaintiff and the other defendants without prejudice to "re-asserting such claims in arbitration." *Major, Lindsey & Afr., LLC*, No. 10-cv-4329 (CM), Dkt. No. 48.

Six days later, on September 16, 2010, MLA brought an arbitration proceeding against Plaintiff in connection with her alleged misappropriation of its proprietary information. *See* Memorandum at 4; FAC ¶ 49.  On July 9, 2014, after nearly four years of proceedings, the arbitrator found, among other things, that Plaintiff had breached her employment agreement with MLA, breached her fiduciary duty to MLA, and misappropriated MLA's confidential information and trade secrets by divulging proprietary information regarding MLA's clients to its competitors.  Dkt. No. 33 ("Goldstein Declaration"), Ex. B ("Partial Final Award") at 5–14; Goldstein Declaration, Ex. D

---

[2] In addition to drawing from the facts alleged in the Amended Complaint, the Court has drawn facts from public filings in the various other courts where the parties have litigated against each other, "not for the truth of the matters asserted in the other litigation[s], but rather to establish the fact of such litigation[s] and related filings." *Fecteau v. City of Mount Vernon*, No. 23-cv-9173 (KMK) (JCM), 2025 WL 754043, at *8 (S.D.N.Y. Mar. 10, 2025) (quotation omitted); *accord Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

("Final Award") at 1; *see* FAC ¶ 49.[3]  It awarded MLA $1,535,338 in disgorgement of Plaintiff's commissions, $232,288 in lost-opportunity damages, and $945,765.39 in "Arbitrator-adjusted litigation costs."  Final Award at 24–25.

On October 6, 2014, Plaintiff filed a petition to vacate the Award in the Supreme Court of the State of New York, County of New York.  *Mahn v. Major, Lindsey, & Afr., LLC*, Index No. 653048/2014, Dkt. No. 1 at 19.  On January 13, 2015, MLA filed a cross-petition to confirm the

---

[3] The arbitration award was issued in three parts:  a "Partial Final Award" issued on May 7, 2013, Goldstein Declaration, Ex. B, a "Second Final Interim Award" issued on October 22, 2013, Goldstein Declaration, Ex. C, and a "Final Opinion and Award" issued on July 9, 2014, Goldstein Declaration, Ex. D (together, the "Award").  According to the arbitrator, the first two awards were issued in two parts because the parties' arbitration agreement provided for the issuance of a partial award followed by a second award after the parties filed motions for reconsideration.  *See* Final Award at 2.  The Final Award incorporates the findings in the first two awards and issues a final award in favor of MLA totaling $2,713,391.39, plus statutory interest of 9% per annum on MLA's disgorgement and lost-opportunity damages.  *See id.* at 1, 24–25; *see* N.Y. C.P.L.R. § 5004.

The Award is properly considered on this motion to dismiss because it is integral to the Amended Complaint.  "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotations and citations omitted).  A document is "integral to the complaint" where the complaint "relies heavily upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotations omitted).  The Amended Complaint relies heavily on the 2010 arbitration and subsequent award as part of its claim that Defendants are liable for abuse of process.  It repeatedly alleges that Defendants pursued and obtained the Award through fraud and deceit, and relies on the alleged fraud and deceit as part of its abuse-of-process claim.  *E.g.*, FAC ¶¶ 54–55, 223, 229, 243, 278, 313, 406.  The Amended Complaint also relies heavily on the Award's terms and effect as part of its defamation claims, as it repeatedly references the arbitrator's conclusions and findings in support of its allegations that Defendants' statements were false.  *See, e.g., id.* ¶ 379 (alleging that Defendants' statements were a "blatant departure from the arbitration record"), 49 (alleging that MLA's "defamatory statements . . . relate to a 2010 arbitration employment dispute," and, purporting to quote from the arbitration proceedings, alleging that the claims at issue in arbitration were "described at the time as 'confidential attorney candidate information'"); *see also, e.g., id.* ¶¶ 49, 340–42, 405.

Having determined that the Award is integral to the Amended Complaint, the Court considers the Award not for "the truth of [its] contents," but rather to "determine what the [Award] stated."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (emphases omitted).  Defendants' assumption that the Court may accept the Award's findings as true at this stage merely by virtue of the Award being integral to the Amended Complaint, Memorandum at 4; *see also* Dkt. No. 41 ("Reply") at 5–6, is incorrect.  Courts do not consider documents for the truth of their contents on a motion to dismiss merely because they are incorporated by reference or integral to the complaint.  *See Roth*, 489 F.3d at 510–11 (reversing dismissal of complaint predicated on truth of SEC filings integral thereto).  Because a New York state court affirmed the Award, the preclusive effect of the Award's findings on this Court is governed by New York's law on collateral estoppel (issue preclusion) and res judicata (claim preclusion).  *See Ferris v. Cuevas*, 118 F.3d 122, 125–26 (2d Cir. 1997).  Collateral estoppel and res judicata are both affirmative defenses, *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001), and Defendants chose not to raise them in this motion, *see* Memorandum at 4; Dkt. No. 40 ("Opposition") at 8 (Plaintiff observing that "Defendants have not raised collateral estoppel or res judicata as a basis of their motion"); Reply at 5–6 (again not raising those defenses).  Accordingly, the Court considers the Award "only to determine *what* [it] stated, and *not to prove the truth of [its] contents.*"  *Roth*, 489 F.3d at 509 (quotations omitted; emphases in original).

4

Award. *Mahn*, Index No. 653048/2014, Dkt. No. 36 at 1. On June 19, 2015, the state court issued

an order denying Plaintiff's petition to vacate the Award and granting MLA's cross-petition to

confirm it. *Mahn*, Index No. 653048/2014, Dkt. No. 60 at 1 (the "State Court Judgment"). It

entered a judgment against Plaintiff and in favor of MLA in the amounts awarded by the arbitrator

plus statutory interest pursuant to N.Y. C.P.L.R. § 5004, totaling $2,863,760.67. *Id.* at 4.

On June 19, 2015, Plaintiff appealed the State Court Judgment to the New York Appellate

Division, First Department. *Mahn*, Index No. 653048/2014, Dkt. No. 63. On March 20, 2018, the

First Department affirmed the State Court Judgment. *Mahn v. Major, Lindsey, & Afr., LLC*, 74

N.Y.S.3d 7, 7–8 (1st Dep't 2018).

Following the affirmance of the State Court Judgment, Plaintiff and MLA engaged in four

years of post-judgment-enforcement proceedings. *See, e.g.*, *Mahn*, Index No. 653048/2014, Dkt. No.

66 (March 20, 2019 notice of Plaintiff's motion to quash information subpoena); *Mahn*, Index No.

653048/2014, Dkt. No. 87 (April 16, 2021 notice of MLA's motion to hold Plaintiff in contempt for

allegedly impeding MLA's collection efforts); *Mahn*, Index No. 653048/2014, Dkt. No. 126 (May 24,

2022 notice of Plaintiff's motion to quash further subpoenas).

On November 4, 2022, while post-judgment proceedings were still ongoing, Plaintiff filed

for Chapter 7 bankruptcy (the "Bankruptcy Action"). *See* FAC ¶¶ 294–97; *In re Mahn*, Case No. 22-

11466 (MG) (Bankr. S.D.N.Y. 2022), Dkt. No. 1.

On November 21, 2023, Plaintiff's trustee in bankruptcy brought suit against MLA and

several of its employees in New York state court, alleging, among other things, that Plaintiff was

sexually assaulted by an MLA employee in 2006 and that MLA was negligent in hiring and

supervising the employee.[4] FAC ¶ 23 (citing *Mahn v. Lawrence N. Mullman, et al.*, Index No.

---

[4] Plaintiff alleged that the suit was timely following the passage in 2022 of New York's Adult Survivor's Act. ASA
Action, Dkt. No. 1 ¶¶ 32, 168; *see* N.Y. C.P.L.R. 214-j.

952263/2023 (the "ASA Action")); *see* ASA Action, Dkt. No. 1 ¶¶ 95–120, 192–221.  On April 9,

2024, the Supreme Court for the State of New York, New York County granted MLA and its

codefendants' motion to compel arbitration of Plaintiff's claims in the ASA Action.  ASA Action,

Dkt. No. 69.  Plaintiff appealed the judgment, and the First Department affirmed.  *Mahn v. Mullman*,

227 N.Y.S.3d 66, 66 (1st Dep't 2025).[5]

On July 5, 2024, MLA filed an adversary complaint against Plaintiff in the Bankruptcy

Action, seeking to block the discharge of Plaintiff's debt to MLA under the State Court Judgment.

FAC ¶¶ 31, 40 (citing *Major, Lindsey & Africa v. Sharon Mahn*, Case No. 24-2822 (MG)); *see Major,*

*Lindsey & Africa v. Sharon Mahn*, Case No. 24-2822 (MG), Dkt. No. 1 (the "Adversary Complaint").

MLA alleged that the debt was not dischargeable by virtue of 11 U.S.C. § 523(a)(4), which excepts

debts from discharge in bankruptcy if they are "for fraud or defalcation while acting in a fiduciary

capacity, embezzlement, or larceny," Adversary Complaint ¶¶ 34–63, and by virtue of 11 U.S.C.

§ 523(a)(6), which excepts debts from discharge if they are "for willful and malicious injury by the

debtor to another entity or to the property of another entity," *id.* ¶¶ 64–73.

On February 10, 2025, the bankruptcy court denied Plaintiff's motion to dismiss MLA's

claims that Plaintiff's conduct constituted "embezzlement," "larceny," and "willful and malicious

injury," *In re Mahn*, 666 B.R. 883, 897–99 (Bankr. S.D.N.Y. 2025), and granted Plaintiff's motion to

dismiss MLA's claim that Plaintiff's conduct constituted "defalcation while acting in a fiduciary

capacity," *id.* at 896.  *See* 11 U.S.C. §§ 523(a)(4), 523(a)(6).

### C.  Defendants' Allegedly Defamatory Statements

Plaintiff alleges that Defendants have made three defamatory statements about her conduct

while she was employed at MLA.  Each statement was made in connection with one of the various

---

[5] On April 15, 2025, Plaintiff's trustee in bankruptcy abandoned the ASA Action.  Bankruptcy Action, Dkt. No. 76.
Plaintiff has maintained the ASA Action in her personal capacity.  *See id.*; FAC ¶ 23.

legal proceedings between Plaintiff and MLA.

Plaintiff's first cause of action alleges that MLA defamed her in a statement submitted to

The American Lawyer for publication in an article discussing the ASA Action.  *See* FAC ¶ 333.  The

American Lawyer published the article on November 22, 2023.  *Id.* ¶ 334.  The article quotes

extensively from MLA's statement.  In relevant part, the article states:

> In response to September's revelation that Mahn's bankruptcy estate was planning to file a complaint containing allegations of sexual assault and harassment against the recruiting firm, a spokesperson for Major Lindsey provided a statement.
>
> "Major, Lindsey & Africa obtained a multi-million-dollar judgment against Ms. Sharon Mahn for breach of her duty of loyalty as an employee under the faithless servant doctrine, which has been confirmed on appeal. . . .  Major, Lindsey & Africa denies the validity of any claims that may be brought by Ms. Mahn's bankruptcy estate and intends to vigorously contest and defend against any such claims."
>
> Mullman [another defendant in the ASA Action] also said that the lawsuit was retaliation for MLA and Mahn's ongoing litigation.
>
> "These claims raised by Sharon Mahn are only the latest attempt in a long series of aggressive actions she has taken against Major, Lindsey, & Africa, where her employment was ended in 2009 when MLA discovered she was secretly selling trade secret information for kickbacks.  Since then, though she says she has been too intimidated to come forward, she has filed dozens of counterclaims against MLA and participated in at least eight years of discovery involving every aspect of her employment at MLA," a spokesperson for the firm said in an email Wednesday.
>
> "In all that time, never once were these claims mentioned.  In fact, Ms. Mahn only now raises them as her bankruptcy case reaches the court, and the risk that she may be forced to repay the millions of dollars she stole from MLA and her colleagues becomes real.  Simply put, it is our belief these claims are patently false and we are confident the court will come to the same conclusion," the spokesperson continued.

Goldstein Declaration, Ex. G (the "Article") at 6.[6]  Plaintiff alleges that MLA's statement in the

Article that "she may be forced to repay the millions of dollars she stole from MLA and her

---

[6] There is no dispute that the Amended Complaint incorporates the Article by reference.  The Article is where MLA's first allegedly defamatory statement was published, and the Amended Complaint cites to and repeatedly quotes from the Article in support of its first defamation claim.  FAC ¶¶ 24–25, 333–35.  Accordingly, the Court has considered the Article in evaluating the merits of Defendants' motion to dismiss, though "only to determine what [it] stated" rather than for "the truth of [its] contents."  *Roth*, 489 F.3d at 509 (quotation omitted); *see e.g.*, *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 684 (S.D.N.Y. 2022) (finding article that published allegedly defamatory statement was incorporated by reference).

colleagues" was false and defamatory because Plaintiff was not found in the arbitration to have stolen "dollars." *E.g.*, FAC ¶ 346 (alleging that MLA defamed Plaintiff by "falsely accus[ing] her of theft of millions of dollars as if she raided [MLA's] imaginary cash register"). Instead, Plaintiff was found to have "misappropriat[ed] . . . assets and property," including trade secrets, confidential information, and business good will. *Id.* ¶ 342; *see* Partial Final Award at 7–9.

Plaintiff's second cause of action alleges that Defendants defamed her in a reply brief in support of MLA and its codefendants' motion to compel arbitration of her claims in the ASA Action. *See* ASA Action, Dkt. No. 67 (the "Reply Brief").[7] The Reply Brief was filed on March 11, 2024. *Id*; FAC ¶ 359. In it, MLA stated that it chose to arbitrate its claims against Plaintiff after terminating her in 2009 because "MLA wanted to recover the damages it suffered due to [Plaintiff's] criminal conduct." Reply Brief at 4. The full sentence read:

> Because MLA wanted to recover the damages it suffered due to Mahn's criminal conduct, it voluntarily dismissed the litigation and pivoted to arbitration.

*Id.* Plaintiff alleges that this statement was defamatory because her conduct while she was employed at MLA was not "criminal conduct." *E.g.*, FAC ¶¶ 359–61.

Plaintiff's third cause of action alleges that Defendants defamed her in the Adversary Complaint that it filed in the Bankruptcy Action. As discussed, the Adversary Complaint alleged that Plaintiff's debt to MLA could not be discharged in bankruptcy because her debt was "incurred by embezzlement, larceny, and/or defalcation while acting in a fiduciary capacity," Adversary Complaint ¶ 3; *see* 11 U.S.C. §§ 523(a)(4). The Adversary Complaint relied on the findings in the Award to allege that Plaintiff's debt under the Award arose from conduct that met the standards for

---

[7] There is also no dispute that the Amended Complaint incorporates the Reply Brief by reference, as that is where Defendants' second allegedly defamatory statement was published, and the Amended Complaint cites to and repeatedly quotes from the Reply Brief in support of its second defamation claim. FAC ¶¶ 56, 161, 359–60. The Court, again, has considered the Reply Brief on this motion to determine what it stated and not for the truth of its contents. *See Roth*, 489 F.3d at 509; *Jacob*, 626 F. Supp. 3d at 684.

exception from discharge under 11 U.S.C. §§ 523(a)(4) and 11 U.S.C. §§ 523(a)(6).  *See* Adversary Complaint ¶¶ 34–73; *see also In re Mahn*, 666 B.R. at 896–99.  Plaintiff alleges that the allegations in the Adversary Complaint were defamatory because her conduct while she was employed at MLA did not constitute "larceny, embezzlement, or defalcation."  *E.g.*, FAC ¶ 379.

### D.  Procedural History

Plaintiff brought this action on November 1, 2024.  Dkt. No. 1.  On December 19, 2024, Plaintiff requested an extension of her deadline to amend the original complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) until January 10, 2025.  Dkt. No. 22.  On December 20, 2024, the Court granted Plaintiff's request.  Dkt. No. 23; *see* Fed. R. Civ. P. 6(b)(1)(A).

Plaintiff, accordingly, filed the Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) on January 10, 2025.  Dkt. No. 24.  The Amended Complaint alleges six causes of action:  three for defamation based on the statements just discussed, *supra* Part II.C; FAC ¶¶ 332–97; one for abuse of process based on Defendants' alleged "lawfare" during the various litigations between Plaintiff and MLA since her termination, FAC ¶¶ 398–426; one for negligent infliction of emotional distress ("NIED") arising from Defendants' alleged "lawfare" and defamatory statements, *id.* ¶¶ 44, 427–35; and one for intentional infliction of emotional distress ("IIED") arising from Defendants' alleged "lawfare" and defamatory statements, *id.* ¶¶ 44, 436–42.

On January 27, 2025, Defendants moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 31 ("Motion"); Dkt. No. 32 (Memorandum); Dkt. No. 33 (Goldstein Declaration).

On February 14, 2025, rather than filing an opposition brief, Plaintiff filed what purported to be a "Second Amended Complaint."  Dkt. No. 35.  Later that day, the Court ordered Plaintiff to show cause why her purported pleading should not be deemed ineffective.  Dkt. No. 36 at 2.  Plaintiff had already amended her complaint as a matter of course pursuant to Rule 15(a)(1), she had

not sought the Court's leave to amend the Amended Complaint, and there was no indication that Plaintiff had sought and obtained Defendants' consent to amend. *Id.* at 1–2; *see* Fed. R. Civ. P. 15(a)(1); *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, No. 12-cv-627 (VSB), 2015 WL 14019326, at *3 (S.D.N.Y. Mar. 25, 2015) ("Rule 15(a)(1) . . . allows for amendment as a matter of course once and only once.").

On February 18, 2025, Plaintiff submitted a letter stating that she had misapprehended Rule 15(a)(1) and conceding that the Rule did not provide a basis for her to file the purported Second Amended Complaint. Dkt. No. 37 at 2. The letter also requested, among other things, that the Court grant Plaintiff leave to file the Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2). *Id.* at 7–8.

On February 20, 2025, the Court issued an order striking Plaintiff's Second Amended Complaint because it was filed in violation of Fed. R. Civ. P. 15(a) and denying Plaintiff's request for leave to amend "without prejudice to renewal . . . following the resolution of Defendants' motion [to dismiss]." Dkt. No. 39 at 2–3. The Court denied Plaintiff's request for leave to amend the Amended Complaint without prejudice because, among other things, permitting a further amendment at that time would prejudice Defendants by delaying the resolution of their pending motion to dismiss and by requiring them to expend the time and money to file additional papers in opposition to a motion to amend and, potentially, a separate motion to dismiss the second amended pleading. *Id.* at 2–3. The Court also extended the deadline for Plaintiff to file opposition papers to Defendants' pending motion to dismiss until March 13, 2025. *Id.* at 3.

On March 13, 2025, Plaintiff filed an opposition to Defendants' motion to dismiss. Dkt. No. 40 (Opposition). Defendants replied on March 27, 2025. Dkt. No. 41 ("Reply"); Dkt. No. 42 ("Supplemental Goldstein Declaration").

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted).  Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.    Defamation

Plaintiff's first three causes of action are for defamation.  The parties agree that Plaintiff's defamation claims are governed by New York law.  Memorandum at 17; Opposition at 13.  "[T]heir consent concludes the choice of law inquiry." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *Bauer v. Baud*, No. 22-cv-1822 (PAC), 2023 WL 2307413, at *4 (S.D.N.Y. Mar. 1, 2023).[8]

In New York, "[d]efamation is the injury to one's reputation either by written expression,

---

[8] New York law governs Plaintiff's remaining claims as well.  The parties agree that New York law applies to those claims.  Memorandum at 19–24; Opposition at 10–11, 22–23; *Am. Fuel Corp.*, 112 F.3d at 134.

which is libel, or by oral expression, which is slander." *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)*, aff'd*, 29 F. App'x 676 (2d Cir. 2002). The alleged statements at issue here were written, so they are allegedly libelous. FAC ¶¶ 332–397.

To state a claim for libel under New York law, a plaintiff must plausibly allege "five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

The third element of a libel claim—the "fault" element—requires a plaintiff to plead "either negligence or actual malice depending on the status of the libeled party." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). The parties agree that Plaintiff is "private figure"— that is, not a "general public figure" or a "limited public figure"—and accordingly, she "must plead only negligence or, where the content is arguably within the sphere of legitimate public concern, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 629 (S.D.N.Y. 2022) (quotation omitted; collecting cases); *see* Dkt. No. 29 at 9–10; Dkt. No. 34 at 4. The fourth element of a defamation claim—the "falsity" element— requires a plaintiff to plead "facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017).

"New York law recognizes certain privileges that shield an individual from liability for defamation." *Sheindlin*, 597 F. Supp. 3d at 629. "[F]or example, statements uttered in the course of a judicial proceeding are absolutely privileged as long as such statements are material and pertinent to the questions involved in the proceeding." *Stega v. New York Downtown Hosp.*, 31 N.Y.3d 661, 669 (2018) (quotation omitted). "[T]his is the broadest of possible privileges." *Kelly v. Albarino*, 485 F.3d

664, 666 (2d Cir. 2007) (quotation omitted). Under the litigation privilege, "[n]othing that is said in

the court room may be the subject of an action for defamation unless . . . it is 'so obviously

impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference

of express malice.'" *Martirano v. Frost*, 25 N.Y.2d 505, 508 (1969) (quoting *Youmans v. Smith*, 153

N.Y. 214, 220 (1897)).

Out-of-court statements reporting on a judicial proceeding may be privileged pursuant to

Section 74 of the New York Civil Rights Law ("Section 74"). Section 74 provides:

> A civil action cannot be maintained against any person, firm or corporation, for the
> publication of a fair and true report of any judicial proceeding, legislative proceeding
> or other official proceeding, or for any heading of the report which is a fair and true
> headnote of the statement published.

N.Y. Civ. Rights Law § 74. The "'fair and true report' privilege" conferred by Section 74 "has been

described as an absolute privilege that is not defeated by the presence of malice or bad faith." *Biro v.*

*Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotations and citations omitted).

"New York Courts have extended the 'fair and true' reporting privilege to statements made by 'those

connected with the suit,'" *Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-cv, 2022 WL

1013982, at *2 (2d Cir. Apr. 5, 2022) (quoting *Branca v. Mayesh*, 476 N.Y.S.2d 187, 189 (2d Dep't

1984), *aff'd* 63 N.Y.2d 994 (1984)), "and to publications of all kinds, including tweets," *id.* (citing

*Highland Cap. Mgmt., L.P. v. Dow Jones & Co.*, 116 N.Y.S.3d 18, 19 (1st Dep't 2019).

"Whether particular words are defamatory presents a legal question to be resolved by the

courts in the first instance." *Celle*, 209 F.3d at 177 (quoting *Aronson v. Wiersma*, 483 N.E.2d 1138,

1139 (1985)). "Because a defamation suit 'may be as chilling to the exercise of First Amendment

freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve

defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y.

2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.

Cir. 1966)).

## III.    DISCUSSION

The Amended Complaint fails to state a claim.  MLA's statement in the Article is not defamatory because it is substantially true, and, in any event, it is protected from suit under the "fair and true" report privilege provided in Section 74 of the New York Civil Rights Law.  Defendants' statements in the Reply Brief and the Adversary Complaint are protected from suit under the absolute privilege afforded to statements made in the course of judicial proceedings.  Plaintiff's abuse-of-process claim fails because Defendants are not alleged to have done more than issue lawful writs for legitimate purposes.  Plaintiff's NIED claim fails because it is based on the same conduct as her defamation and abuse-of-process claims and because it is premised entirely on intentional, not negligent, conduct.  Her IIED claim also fails because it is duplicative of her other tort claims, as well as because Defendants' alleged conduct is not outrageous and extreme enough to be actionable.

### A.    MLA's Statement that Plaintiff "May Be Forced to Repay the Millions of Dollars She Stole from MLA and Her Colleagues" Is Not Defamatory Because It Is Substantially True

MLA's statement that Plaintiff only raised her ASA claims "as her bankruptcy case reaches the court, and the risk that she may be forced to repay the millions of dollars she stole from MLA and her colleagues becomes real," FAC ¶ 24, is not defamatory because it is "substantially true." *Tannerite*, 864 F.3d at 246 (quotation omitted).  MLA offered this statement "for inclusion and publication in an . . . article [about the ASA Action] published on November 22, 2023."  FAC ¶ 24.  MLA's full comment, as published in the article, is as follows:

> Major, Lindsey & Africa obtained a multi-million-dollar judgment against Ms. Sharon Mahn for breach of her duty of loyalty as an employee under the faithless servant doctrine, which has been confirmed on appeal.  . . .  Major, Lindsey & Africa denies the validity of any claims that may be brought by Ms. Mahn's bankruptcy estate and intends to vigorously contest and defend against any such claims. . . .
>
> These claims raised by Sharon Mahn are only the latest attempt in a long series of aggressive actions she has taken against Major, Lindsey, & Africa, where her employment was ended in 2009 when MLA discovered she was secretly selling trade secret information for kickbacks.  Since then, though she says she has been too

> intimidated to come forward, she has filed dozens of counterclaims against MLA and
> participated in at least eight years of discovery involving every aspect of her
> employment at MLA. . . .
>
> In all that time, never once were these claims mentioned.  In fact, Ms. Mahn only now
> raises them <u>as her bankruptcy case reaches the court, and the risk that she may be
> forced to repay the millions of dollars she stole from MLA and her colleagues becomes
> real</u>.  Simply put, it is our belief these claims are patently false and we are confident
> the court will come to the same conclusion.

Article at 6 (emphasis added where statement is alleged to be defamatory).

Plaintiff has not plausibly pleaded the falsity of this statement.  As discussed, a statement is

only defamatory under New York law if it is false, and a statement is not "false" under New York

law as long as it is "substantially true."  *Tannerite*, 864 F.3d at 242 (quotation omitted).  "[A]

statement is substantially true if the statement would not have a different effect on the mind of a

reader from that which the pleaded truth would have produced."  *Id.* at 242 (quoting *Franklin v. Daily

Holdings, Inc.*, 21 N.Y.S.3d 6, 12 (1st Dep't 2015).  "When a court interprets a publication in an action

for defamation, '[t]he entire publication, as well as the circumstances of its issuance, must be

considered in terms of its effect upon the ordinary reader.'"  *Id.* (quoting *Silsdorf v. Levine*, 59 N.Y.2d

8, 13 (1983)).

As an initial matter, it is clear, in context, that when MLA said Plaintiff "may be forced to

repay the millions of dollars she stole," it was talking about her debt under the State Court

Judgment.  MLA began its statement in the article by raising the judgment, and MLA did not say

merely that Plaintiff "'stole' 'millions of dollars,'" FAC ¶ 25; *see* Opposition at 14, but also that she

would have to "repay" that amount, Article at 6.

MLA spoke truthfully when it stated that repayment may be imminent.  There is no dispute

that the State Court Judgment exists and that, but for Plaintiff's bankruptcy petition, it would now

be enforceable against Plaintiff.  *E.g.*, FAC ¶ 280 (citing to and acknowledging State Court Judgment

and its affirmance on appeal).  There is also no dispute that under the State Court Judgment,

Plaintiff owes MLA "millions of dollars."  Article at 6; *see* State Court Judgment at 4 (entering $2,863,760.67 judgment against Plaintiff in favor of MLA), *aff'd*, *Mahn*, 74 N.Y.S.3d at 7–8.  Whether Plaintiff will have to pay MLA the full amount of the State Court Judgment may depend on the outcome of the various litigations between the parties, including the Bankruptcy Action, but MLA's statement explicitly accounted for that possibility.  MLA stated only that there was a "risk" that Plaintiff "may" have to repay the judgment, not that repayment was inevitable.  Article at 6; FAC ¶ 24.

Plaintiff cannot sustain a defamation claim on the theory that MLA should have clarified that Plaintiff owed millions of dollars for stealing *trade secrets*, *see* Opposition at 14, 17; FAC ¶¶ 333–35, rather than simply stating, as it did in the Article, that Plaintiff had stolen millions of *dollars*. FAC ¶ 332–57; *see* Article at 6 (MLA stating that Plaintiff "may be forced to repay the millions of dollars she stole from MLA and her colleagues").  That is Plaintiff's primary argument:  that MLA defamed her by stating that she stole dollars even though the arbitrator actually found that she stole trade secrets.  *See, e.g.*, FAC ¶ 346 (alleging that MLA defamed Plaintiff by "falsely accus[ing] her of theft of millions of dollars as if she raided [MLA's] cash register"); Opposition at 14 (arguing that MLA's statement is "false and unprovable" because MLA "does not offer that [it] had a cash register from which Ms. Mahn could have accessed the 'millions of dollars' nor have any of [her] phony colleagues come forward with their claims of stolen dollars"), *see also id.* at 22 (arguing that the arbitrator did not find Plaintiff guilty of theft because trade secrets are not property under New York law).  Plaintiff's careful parsing of the statement is fair.  MLA's statement was inaccurate because Plaintiff was found to have stolen assets worth millions of dollars, rather than cash in that amount.  *See* Partial Final Award at 7 (finding that Plaintiff "was stealing [MLA's] assets or property consisting of confidential information and trade secrets, as well as its business good will").

"[M]inor inaccuracies" in a statement, however, are not enough to plead the falsity element

of a defamation claim. *Tannerite*, 864 F.3d at 242 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)). "When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." *Id.* at 243 (quoting *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934)). The question is whether the inaccuracies in the statement cause it to produce "a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 242 (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012)).

The distinction between the "pleaded truth" in the Amended Complaint and MLA's statement in the Article is too minor to have a "different effect on the mind of a reader." *Id.* at 242 (quoting *Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 12 (1st Dep't 2015). The pleaded truth, based on the Amended Complaint and the documents integral to it, is that Plaintiff owes MLA millions of dollars because an arbitrator found that she "was stealing [MLA's] assets or property consisting of confidential information and trade secrets, as well as its business good will." Partial Final Award at 7. The Amended Complaint acknowledges that the State Court Judgment affirmed a multi-million-dollar arbitration award "premised on claims of misappropriation of assets and property," FAC ¶¶ 280, 342; *see also* State Court Judgment at 4; Opposition at 18 (acknowledging that "an arbitrator found a 'trade secret' existed in the underlying arbitration"), and it does not dispute the accuracy of MLA's statement in the Article that Plaintiff was terminated "in 2009 when MLA discovered she was secretly selling trade secret information for kickbacks," Article at 6; *see* FAC ¶¶ 25, 356 (alleging only that MLA's statement that Plaintiff "'stole' 'millions of dollars'" was false and defamatory); *see also id.* ¶¶ 333–35. Plaintiff also does not dispute that, depending on the outcome of the parties' various litigations, she may have to "repay" MLA "millions of dollars" under the State Court Judgment. *See id.* ¶ 280 (citing to the State Court Judgment and acknowledging that "a judgment was entered against [Plaintiff]," which "was appealed and affirmed on March 20, 2018").

MLA's statement in the article did not stray enough from the pleaded truth to render it "substantially false." *Tannerite*, 864 F.3d at 242 (quoting *Franklin*, 21 N.Y.S.3d at 12). There is a distinction between stating that Plaintiff stole millions of dollars and stating that Plaintiff stole trade secrets and therefore owes millions of dollars, *see* Article at 6; Partial Final Award at 7, but the distinction is "fine and shaded," and the "effect on the mind of the average reader" of either statement is the same, *Tannerite*, 864 F.3d at 242, 246 (quotations omitted); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden*, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) (dismissing defamation claim where statements aligned with jury findings in state court case and with factual matter alleged in complaint). Both statements describe acts of theft, and the scale of the theft described is identical—to the tune of "millions of dollars." Article at 6; *see* State Court Judgment at 24–25. Moreover, the full context of MLA's statement reminds the reader that MLA was, in fact, talking about the theft of trade secrets and not the theft of dollars. MLA stated in the Article that it terminated Plaintiff after discovering that "she was secretly selling trade secret information for kickbacks." Article at 6. MLA's discussion of the dispute arising from her alleged trade-secret theft immediately preceded its statement that Plaintiff "may be forced to repay the millions of dollars she stole from MLA." *Id.* Taken in context, MLA's statement merely that Plaintiff stole millions of "dollars" would not produce a different effect on the mind of the average reader than would a statement that Plaintiff stole millions of dollars worth of trade secrets. *See Tannerite*, 864 F.3d at 246; *Cabello-Rondon v. Dow Jones & Co., Inc.*, No. 16-cv-3346 (KBF), 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018) (finding statement that plaintiff was the "biggest target" of an ongoing criminal investigation was substantially true because plaintiff was under investigation). MLA's statement, accordingly, was "substantially true." *Tannerite*, 864 F.3d at 241 (quotation omitted).

The FAC also adds allegations that the Award cannot support the substantial truth of MLA's

statement because the Award failed to properly identify any trade secrets that Plaintiff misappropriated, *see* FAC ¶ 340–43; *see also, e.g., id.* ¶¶ 38, 51, but those allegations fundamentally mischaracterize the award's findings and legal conclusions, and accordingly, are not entitled to a presumption of truth. "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Mumin v. City of New York*, 760 F. Supp. 3d 28, 48 (S.D.N.Y. 2024) (collecting cases); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (drawing all facts from the pleadings on a motion to dismiss "unless contradicted by more specific allegations or documentary evidence"). The contents of a document relied on in the complaint "are controlling where a plaintiff has alleged that the document contains, or does not contain, certain statements" and the statements in the document "contradict the allegations in the complaint." *Roth*, 489 F.3d at 511 (quotations omitted).

As discussed, the Award is integral to the Amended Complaint because the Amended Complaint relies heavily on the Award's terms and effect. *Supra* n.3. The Court need not accept as true allegations that the Award said or found something that it did not, even though the Court does not take the Award's findings as true at this stage. *See Roth*, 489 F.3d at 511; *Idle Media, Inc. v. Create Music Grp., Inc.*, No. 24-cv-00805 (JLR), 2024 WL 5009713, at *10–11 (S.D.N.Y. Dec. 6, 2024) (dismissing breach-of-contract allegations that contradicted representations in demand letter incorporated by reference into complaint that plaintiff was not a party to the alleged contract). Accordingly, the Court need not accept as true Plaintiff's allegations that the Award was "premised" on the false finding that the attorney-candidates who seek MLA's help to find jobs were, in and of themselves, "'trade secrets' or 'confidential information,'" FAC ¶¶ 340–43; *see also id.* ¶¶ 51–54 (alleging that the arbitrator made such findings because Defendant made arguments to that effect), as those allegations are belied by the Award. Contrary to Plaintiff's allegations, the Award found

"that the *information in [MLA's] Recruit database*" was "a trade secret." Partial Final Award at 9 (emphasis added). The information in MLA's database, according to the Award, consisted of information *about* MLA's job candidates, including, among other things, "why a candidate might wish to leave a firm; the history of the candidate's law firm employment; the personal contact information of active candidates; the names of family members and similar private information; . . . areas of intended development; and similar personal information." *Id.* The Award nowhere contends that the candidates themselves were trade secrets, *see generally id.* at 9–14, and Plaintiff's own allegations elsewhere in the FAC concede that the Award found that Plaintiff misappropriated "[MLA's] *information about* practicing attorneys." FAC ¶ 240 (emphasis added); *see also id.* ¶ 85 (alleging that MLA is in the business of "sell[ing] data *about attorneys* (the 'job seekers') to law firms and businesses" (emphasis added)). The Court, accordingly, does not accept as true Plaintiff's allegations that the Award was so flawed that MLA's reliance on it in the statement in the Article "cannot shield its statement as being . . . substantially true." *Id.* ¶ 339.

In sum, because MLA's statement in the article "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced," MLA's statement was substantially true and not defamatory. *Tannerite*, F.3d at 242 (quotation omitted). Plaintiff's defamation claim based on MLA's statement in the article is, accordingly, dismissed. *Id.*

### B. MLA's Statement that Plaintiff "May Be Forced to Repay the Millions of Dollars She Stole from MLA and Her Colleagues" Is Protected from Suit Under Section 74 of the New York Civil Rights Law

In addition to being non-actionable because it is substantially true, MLA's statement in the article is privileged from Plaintiff's defamation claim under the "fair and true report" privilege in Section 74. The "fair and true report" privilege protects statements that are "substantially accurate, that is if, despite minor discrepancies, [they do] not produce a different effect on a reader than would a report containing the precise truth." *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir.

2021). "New York courts 'adopt a liberal interpretation of the fair and true report standard of Section 74 so as to provide broad protection to news accounts of judicial proceedings.'" *Id.* (quoting *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017)) (alterations omitted). "The language used should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979). "Nor should a fair report which is not misleading, composed and phrased in good faith . . . be thereafter parsed and dissected on the basis of precise denotative meanings which may literally, although not contextually, be ascribed to the words." *Ctr. For Med. Progress*, 551 F. Supp. 3d at 329 (quoting *Holy Spirit Ass'n*, 49 N.Y.2d at 68).

"For substantially the same reasons" that MLA's statement is "substantially true" and therefore not defamatory, MLA's statement is "substantially accurate" and therefore protected under the "fair and true report" privilege. *Zappin v. Daily News, L.P.*, No. 16-cv-8762 (KPF), 2017 WL 3425765, at *14 n.12 (S.D.N.Y. Aug. 9, 2017). MLA's statement was a substantially accurate report of the State Court Judgment and Plaintiff's obligations to MLA thereunder. It was accurate to state that MLA "obtained a multi-million-dollar judgment against [Plaintiff]." Article at 6. It was accurate to state that Plaintiff "may be forced to repay" under the judgment. *Id.* And it was substantially accurate to state that Plaintiff "'stole' 'millions of dollars' from [MLA]," FAC ¶ 356, because the Award found that Plaintiff owed millions of dollars for stealing trade secrets from MLA, and in context, the distinction between the Award's findings and MLA's statement would "not produce a different effect on a reader." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 329 (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)) (finding statement that was "substantially true" was also "substantially accurate" and thus protected under the "fair and true" report privilege).

Accordingly, Plaintiff's statement in the article is privileged from a suit for defamation under Section 74. This too requires dismissal of Plaintiff's defamation claim arising from MLA's statement

in the Article.

### C. Plaintiff Has Failed to Plead a Defamation Claim Arising from MLA's Statement in a Legal Brief that Plaintiff Engaged in "Criminal Conduct"

MLA's statement in the Reply Brief that Plaintiff engaged in "criminal conduct" while employed at MLA is not defamatory because that statement was pertinent to the litigation in which it was made.[9]  MLA filed the Reply Brief in support of its motion to compel the arbitration of Plaintiff's claims in the ASA Action.  Reply Brief at 4.  In her opposition, Plaintiff had argued that the arbitration agreement on which MLA's motion relied could not be "authenticated."  *Mahn*, No. 952263/2023, Dkt. No. 35 at 7.  MLA argued, on reply, that Plaintiff had submitted the same arbitration agreement as evidence in the 2010 Action, and that MLA "pivoted to arbitration" following Judge McMahon's ruling on Plaintiff's motion to dismiss in that case.  *See* Reply Brief at 4. The full paragraph in the Reply Brief read:

> Plaintiff fails to acknowledge these facts, conceding only that Mahn engaged in an arbitration with MLA 'upon the advice of counsel, and as directed by United States District Court Judge McMahon.'  But Judge McMahon issued an order relating to Mahn's Arbitration Agreement only because Mahn cited it as the evidentiary basis for seeking dismissal of MLA's lawsuit.  And to be accurate, Judge McMahon did not 'direct' anyone to file an arbitration demand.  Instead, she ruled that while certain claims for injunctive relief could be pursued in litigation, all of MLA's claims for monetary damages were subject to arbitration.  <u>Because MLA wanted to recover the damages it suffered due to Mahn's criminal conduct, it voluntarily dismissed the litigation and pivoted to arbitration.</u>  But this does not change the fact that Mahn repeatedly admitted that her Arbitration Agreement was authentic, valid, and enforceable.  These judicial admissions are binding and defeat Plaintiff's current attempt to challenge the agreement's authenticity.

*Id.* (record citations and emphasis omitted; emphasis added where statement is alleged to be defamatory).

MLA's statement is immune from suit because it was "material and pertinent to the questions involved" in the ASA Action.  *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015) (quotation

---

[9] Plaintiff alleges that Allegis is also liable for MLA's statement in the Reply Brief because Allegis "reviewed and approved" the Reply Brief "prior to its filing and publication."  FAC ¶ 361.

omitted).  New York Law has long provided for "absolute immunity from liability for defamation

. . . for oral or written statements made by attorneys in connection with a proceeding before a court

'when such words and writings are material and pertinent to the questions involved.'"  *Id.* (quoting

*Youmans* 153 N.Y. at 219).  The point of the litigation privilege is to permit litigants to speak in court

"with that free and open mind which the administration of justice demands."  *Youmans*, 153 N.Y. at

219.

      The absolute privilege for in-court statements is very broad—"considerably broader in scope

than that for out-of-court reports relating to the proceeding."  *Aguirre v. Best Care Agency, Inc.*, 961 F.

Supp. 2d 427, 456 (E.D.N.Y. 2013) (quoting *Long v. Marubeni Am. Corp.,* 406 F. Supp. 2d 285, 294

(S.D.N.Y. 2005)); *accord Kelly*, 485 F.3d at 666 (noting that the litigation privilege "is broadest of

possible privileges" (quotation omitted)).  "The privilege embraces anything that may possibly be

pertinent."  *Andrews v. Gardiner*, 224 N.Y. 440, 445 (1918).  It protects "any matter which, by any

possibility, under any circumstances, at any stage in the proceeding, may be or may become material

or pertinent . . . even though such matter may be ineffectual as a defense."  *Kelly*, 485 F.3d at 666

(quotation omitted; collecting authorities).

      "The pertinence of a statement made in the course of judicial proceedings is a question of

law for the court."  *Sexter & Warmflash, P.C. v. Margrabe*, 828 N.Y.S.2d 315, 324 (1st Dep't 2007).

"In answering that question, any doubts are to be resolved in favor of pertinence."  *Id.* (collecting

cases).  "The test of pertinence is 'extremely liberal'; the offending statements 'need be neither

relevant nor material to the threshold degree required in other areas of the law, and the barest

rationality, divorced from any palpable or pragmatic degree of probability, suffices.'"  *Pomerance v.*

*McTiernan*, 859 N.Y.S.2d 44, 46 (1st Dep't 2008) (quoting *Sexter*, 828 N.Y.S.2d at 324).  If this

pertinence test is met, a statement is privileged even if the statement is "clearly reprehensible and

possibly deliberately false."  *Id.*  A statement only fails the pertinence test if "it is 'so obviously

impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice.'" *Martirano*, 25 N.Y.2d at 508 (quoting *Youmans*, 153 N.Y. at 220).  "In other words, the statement must be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame." *Id.*

MLA's statement in the Reply brief was pertinent to the questions involved in the ASA Action.  Multiple courts, including the Second Circuit, have found statements accusing a party's adversary of criminal conduct to be pertinent where they were offered to impeach the adversary's credibility in proceedings in which the parties' "credibility [is] at issue."  *Kelly*, 485 F.3d at 666 (holding that party's "charge of larceny" in an affidavit submitted during surrogate-court proceedings "was pertinent" because "during the time period surrounding the filing of the affidavit," the parties "were making factual representations to the Surrogate . . . thereby placing their good faith and their credibility at issue"); *see Dachowitz v. Kranis*, 401 N.Y.S.2d 844 (2d Dep't 1978) (observing that "a statement made in a judicial proceeding accusing an opposing party of having been convicted of a crime may, in a given case, be deemed privileged on the ground that it was made to impeach the credibility of that party").  MLA's statement was pertinent for the same reason.  Plaintiff had argued that the arbitration agreement underlying MLA's motion to compel was inauthentic, and had offered her own "aver[ment] . . . that the entity that inked the [alleged arbitration agreement] did not exist in 2005," the year when MLA said that it was signed.  *Mahn*, No. 952263/2023, Dkt. No. 35 at 7.  In pitting her own word against MLA's, Plaintiff placed her "good faith and . . . credibility at issue." *Kelly*, 485 F.3d at 666.  MLA's response that she had engaged in "criminal conduct" while employed at MLA, accordingly, was pertinent as a way of undermining Plaintiff's good faith and impeaching her credibility.  *See id.*; *Dachowitz*, 401 N.Y.S.2d 844.

Despite Plaintiff's arguments, MLA's response was not "so outrageously out of context" as

to permit a conclusion that "it was motivated by no other desire than to defame." *Martirano*, 25

N.Y.2d at 508. The Reply Brief did not accuse Plaintiff of "criminal conduct" out of nowhere. It

explicitly raised the State Court Judgment and Award finding Plaintiff liable for trade-secret

misappropriation. Reply Brief at 1. The connection between the judgment against Plaintiff for

"stealing trade secrets" and MLA's statement that she engaged in "criminal conduct" is, at a

minimum, enough to admit of "the barest rationality," which is all that is required for a statement to

be pertinent and privileged. *Pomerance*, 859 N.Y.S.2d at 46; *see also Chord Assocs., LLC v. Protech 2003-*

*D, LLC*, No. 07-cv-5138 (JFB) (AKT), 2010 WL 3780380, at *3 (E.D.N.Y. Sept. 21, 2010) (holding

accusations of criminal conduct were pertinent "even if ultimately proven inaccurate or false"

because they supported "[o]ne of defendants' theories of this case"); *Gristede's Foods, Inc. v. Poospatuck*

*(Unkechauge) Nation*, No. 06-cv-1260 (KAM), 2009 WL 4547792, at *10 (E.D.N.Y. Dec. 1, 2009)

(similar).

      MLA's statement in the Reply Brief, accordingly, is absolutely privileged. Plaintiff's

defamation claim arising from the statement is dismissed.

      **D. Plaintiff Has Failed to Plead a Defamation Claim Arising from MLA's**
             **Allegation that Plaintiff's Debt Could Not Be Discharged in Bankruptcy**
             **because It Was "Incurred by Embezzlement, Larceny, and/or Defalcation**
             **while Acting in a Fiduciary Capacity"**

      MLA's allegations in the Adversary Complaint that Plaintiff's debt could not be discharged

in bankruptcy because the Bankruptcy Code excepts debts from discharge if they are obtained

through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny,"

Adversary Complaint ¶¶ 34–63, 11 U.S.C. § 523(a)(4) ("Section 523(a)(4)"), are privileged from suit

because they were pertinent to the bankruptcy proceedings.[10] On November 4, 2022, as post-

judgment enforcement proceedings pursuant to the State Court Judgment were ongoing in state

---

[10] Plaintiff alleges that Allegis is also liable for MLA's allegations in the Adversary Complaint because Allegis "reviewed and approved" the Adversary Complaint "prior to its filing and publication." FAC ¶ 382.

court, Plaintiff filed for Chapter 7 bankruptcy. *In re Sharon Mahn*, No. 22-bk-11466 (MG), Dkt. No. 1; *Mahn*, No. 653048/2014, Dkt. No. 182. On July 5, 2024, MLA filed the Adversary Complaint, seeking to block the discharge in bankruptcy of Plaintiff's debt to MLA under the State Court Judgment. FAC ¶¶ 31, 40 (citing *Major, Lindsey & Africa v. Sharon Mahn*, Case No. 24-02822 (MG)); *see generally* Adversary Complaint ¶¶ 34–73. MLA alleged, among other things, that the debt was not dischargeable by virtue of Section 523(a)(4), which excepts debts from discharge if they are "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," Adversary Complaint ¶¶ 34–63; 11 U.S.C. § 523(a)(4).

MLA's allegations in the Adversary Complaint fall well within the scope of New York's absolute litigation privilege for statements made in the course of a judicial proceeding. As discussed, the absolute litigation privilege protects any statement that, "by any view or under any circumstances, . . . may be considered pertinent to the litigation." *Martirano*, 25 N.Y.2d at 507. The privilege applies to statements made in federal bankruptcy proceedings. *E.g.*, *Friedman v. Alexander*, 433 N.Y.S.2d 627, 628 (2d Dep't 1980); *Weissman v. Hassett*, 47 B.R. 462, 468 (S.D.N.Y. 1985). Accordingly, as long as a complaint's allegations in a bankruptcy proceeding are pertinent, "the fact that they were insufficiently alleged makes no difference" and does not "deprive [the speaker] of their privilege." *Lesser v. Int'l Tr. Co.*, 161 N.Y.S. 624, 628 (1st Dep't 1916) (holding allegations in bankruptcy petition were privileged even though they were stricken by the bankruptcy judge "as irrelevant, immaterial, and scandalous"); *see also Friedman*, 433 N.Y.S.2d at 627–28 (holding allegedly defamatory statements in bankruptcy proceeding were pertinent and privileged because they alleged improprieties of member of a creditors' committee of the bankruptcy petitioner).

MLA's allegations in the Adversary Complaint easily pass the "extremely liberal" test for pertinence. *Sexter*, 828 N.Y.S.2d at 324 (quotation omitted). MLA, like all creditors, is free to argue that its debt is not dischargeable under the Bankruptcy Code so long as "the barest rationality,

divorced from any palpable or pragmatic degree of probability," supports its argument.  *Pomerance*, 859 N.Y.S.2d at 46 (quotation omitted).  That is the point of the litigation privilege—to ensure that litigants can advocate for their positions with "freedom and boldness," and without fear of "peril[] if it later be determined that some statement of [theirs] was not technically relevant to the issue involved."  *Martirano*, 25 N.Y.2d at 508–09 (quotation omitted).  There is no way to allege that a debt is not dischargeable under Section 523(a)(4) without using the words MLA used, because MLA used the exact words provided in Section 523(a)(4).  Adversary Complaint ¶ 3; 11 U.S.C. § 523(a)(4) (excepting from discharge "any debt . . . for fraud, defalcation while acting in a fiduciary capacity, embezzlement, or larceny").  The "barest rationality" is also easily discernible in MLA's allegations, *see Pomerance*, 859 N.Y.S.2d at 46, as Section 523(a)(4) applies to debts incurred by, among other things, "larceny" and "embezzlement," and Plaintiff's debt arises from a judgment against Plaintiff for "misappropriation" of MLA's "assets and property," FAC ¶ 342; *see* State Court Judgment at 4, Partial Final Award at 6, 9.[11]

Accordingly, MLA's allegations in the Adversary Complaint are immune from Plaintiff's claims for defamation.  Plaintiff's defamation claims arising from MLA's allegations are dismissed.

### E.  Plaintiff Has Failed to State a Claim for Abuse of Process

Plaintiff's abuse-of-process claim fails because she has not plausibly alleged that Defendants employed a legal process for an illegitimate purpose.  To state a claim for abuse of process under New York law, a plaintiff must plausibly allege that the defendant "(1) employ[ed] regularly issued

---

[11] MLA's allegations are privileged regardless of their success on the merits.  *See, e.g.*, *Breuninger v. Williams*, No. 20-cv-7033 (JPC), 2024 WL 3088770, at *5 (S.D.N.Y. June 20, 2024) (finding allegations in complaint were privileged and noting that whether they are "meritorious has no bearing on the privilege analysis").  Still, it is worth noting that the bankruptcy court has since determined that the Adversary Complaint adequately states a claim that Plaintiff's debt is non-dischargeable pursuant to Section 523(a)(4).  *In re Mahn*, 666 B.R. at 899.  The bankruptcy court held that the Adversary Complaint plausibly pleads that the debt was incurred through "embezzlement" and "larceny."  *Id.* at 896–97.  It held that the Adversary Complaint does not plausibly plead that the debt was incurred through "defalcation while acting in a fiduciary capacity" because it does not sufficiently plead a fiduciary relationship between MLA and Plaintiff.  *Id.* at 895–96.

legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

Plaintiff alleges that Defendants are liable for abuse of process because they levied "false" and "malicious[]" accusations at her in the Reply Brief and Adversary Complaint, FAC ¶ 416, but those allegations do not suffice to plead the first element of an abuse-of-process claim—that Defendants "issued legal process *to compel performance or forbearance of some act*." *Teddy Volkswagen of the Bronx, LLC v. Demersky*, No. 19-cv-2337 (AJN), 2020 WL 6424115, at *2 (S.D.N.Y. Nov. 1, 2020) (emphasis in original, quotation omitted). "Process" in the context of an abuse-of-process claim "is a direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act." *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969) (quotation omitted). "It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie." *Id.*; *accord Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). Pleadings do not, by themselves, interfere with one's person or property, and accordingly, the filing of a pleading "is not legally considered process capable of being abused." *PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988) (quoting *Curiano*, 63 N.Y.2d at 116–17).

Even accepting Plaintiff's allegations that Defendants made false and malicious accusations in the Reply Brief and Adversary Complaint, FAC ¶¶ 414–16, and that Defendants' sole purpose in making those statements was to "defame and harass" her, *id.* ¶¶ 421–25, Plaintiff has merely identified statements MLA made in a brief responding to a suit that Plaintiff herself initiated (the Reply Brief) and in a pleading "institut[ing] a civil action" (the Adversary Complaint). *PSI Metals*, 839 F.2d at 43 (quotation omitted). It is not enough to allege, as Plaintiff has, that Defendants'

statements were made with a "malicious motive." *Curiano*, 63 N.Y.2d at 117 (dismissing abuse-of-process claim where plaintiff alleged "only that defendants acted maliciously in bringing [an] action" because "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process"); *see* Opposition at 11–12; FAC ¶¶ 421–25. Defendants are not alleged, merely by virtue of making those statements, to have made use of a process to interfere with Plaintiff's "person or property." *Williams*, 23 N.Y.2d at 596; *see also Joseph v. Joseph*, 967 N.Y.S.2d 324, 325 (1st Dep't 2013) (affirming dismissal of abuse-of-process claim because it "rest[ed] on the same facts and allegations supporting [plaintiff's] defamation claim"). Defendants' alleged statements and the initiation of the arbitration proceeding simply cannot, by themselves, give rise to a cause of action for abuse of process. *See Williams*, 23 N.Y.2d at 596; *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 107 (S.D.N.Y. 2020) (dismissing abuse-of-process claim predicated on false statements made in pleading, noting that "[t]he defense to purportedly frivolous litigation is generally to prevail in that litigation, not to seek a state-law tort remedy" (quoting *Teddy Volkswagen*, 2020 WL 6424115, at *2)).[12]

MLA is also alleged to have issued several information subpoenas and other post-judgment writs as part of its efforts to obtain repayment of the State Court Judgment, FAC ¶¶ 280–92, but those writs, as alleged, do not support a claim for abuse of process because they are not alleged to have been issued "in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76 (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). "In order to state a claim for abuse of process, a plaintiff must [allege] that the defendants had an improper *purpose* in instigating the [alleged process]." *Id.*, 331 F.3d at 77 (emphasis in original). To adequately

---

[12] Plaintiff also argues that she has adequately pleaded an abuse-of-process claim based on her allegations that MLA filed a lawsuit against a different former employee, Lauren Drake, and later dropped the lawsuit after Ms. Drake stated that her "reason for leaving" MLA was its "toxic, misogynistic work environment perpetuated by high-ranking MLA executives." FAC ¶¶ 154–55; Opposition at 10. These allegations, too, allege no more than the "institution of a civil action" by MLA. *Curiano*, 63 N.Y.2d at 117. They do not suffice to state a claim for abuse of process under New York law. *Id.*

plead an improper purpose behind a process, a plaintiff must plausibly allege that the defendants "aimed to achieve a collateral purpose beyond or in addition to" the legitimate ends of that process. *Id.*; *accord Hernandez*, 939 F.3d at 204; *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). As one treatise put it, the issuance of the process "must constitute a perversion of the process so as to deprive the process of its proper function and permit its use for a purpose not sanctioned by law." 86 N.Y. Jur. 2d Process and Papers § 164 (citing *Hauser v. Bartow*, 273 N.Y. 370 (1937)); *accord Roelcke v. Zip Aviation, LLC*, No. 15-cv-6284 (DAB), 2019 WL 10856680, at *5 (S.D.N.Y. Jan. 8, 2019).

Plaintiff alleges that, in the wake of the First Department's affirmance of the State Court Judgment, MLA issued several subpoenas to Plaintiff, her employer, and her father, FAC ¶¶ 280–89, and issued a Property Execution to the Sheriff of New York County against certain of Plaintiff's financial accounts, *id.* ¶¶ 290–92, all with the intention of "intimidating," "smear[ing]," and "bankrupt[ing]" her, *id.* ¶¶ 216, 293; *see also, e.g.*, ¶¶ 295–96. These allegations allege that MLA "acted with an improper *motive*," but they do not allege that MLA "had an ulterior *purpose* or *objective*" in issuing the writs beyond obtaining repayment of the State Court Judgment. *Savino*, 331 F.3d at 78 (emphases in original). As a general matter, parties are "absolutely entitled" under New York law to issue subpoenas and other writs in pursuit of "post-judgment discovery as part of [their] effort to collect [a] judgment." *Mahn*, No. 653048/2014, Dkt. No. 156 at 3–4;[13] *see Zappin v. Comfort*, No. 18-cv-01693 (ALC) (OTW), 2022 WL 6241248, at *12–13 (S.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022) (dismissing abuse-of-process claim predicated on post-judgment fee subpoenas and proceedings for, among other things, failure to allege improper purpose). Because the post-judgment writs are not alleged to have been issued

---

[13] On June 30, 2022, the Supreme Court for the State of New York, New York County, issued an order finding that MLA's post-judgment writs were "reasonable" and declining to grant Plaintiff's motion for a protective order. *Mahn*, No. 653048/2014, Dkt. No. 156 at 3–4. The Court takes judicial notice of this order, not for the truth of the matters asserted in the New York Supreme Court's order, but to establish the fact of its issuance. *Fecteau v. City of Mount Vernon*, No. 23-cv-9173 (KMK) (JCM), 2025 WL 754043, at *8 (S.D.N.Y. Mar. 10, 2025) (quotation omitted).

for a collateral purpose beyond or in addition to their legitimate ends of enforcing the State Court

Judgment, they do not support a claim for abuse of process. *See Savino*, 331 F.3d at 78; *Zappin*, 2022

WL 6241248, at \*12–13.

For these reasons, the FAC does not state a claim for abuse of process.

### F.  Plaintiff Has Failed to State a Claim for Negligent Infliction of Emotional Distress

Plaintiff's NIED claim fails because it is predicated on the same conduct embraced by her

claims for defamation and abuse of process.  "To plead a negligent infliction of emotional distress

claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2)

emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4)

circumstances providing some guarantee of genuineness of the harm."  *Francis v. Kings Park Manor,*

*Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).  "However, New York law explicitly bars recovery for negligent

or intentional infliction of emotional distress when such claims are based on conduct that is

embraced by a traditional tort remedy."  *Poulos v. City of New York*, No. 14-cv-3023 (LTS) (HBP),

2015 WL 5707496, at \*10 (S.D.N.Y. Sept. 29, 2015) (quotation omitted; collecting cases); *accord Afifi*

*v. City of New York*, 961 N.Y.S.2d 269, 270 (2d Dep't 2013) (dismissing NIED claim as duplicative of

other viable tort claims).  The tort of NIED "has its roots in the acknowledgment by the courts of

the need to provide relief in those circumstances *where traditional theories of recovery do not*."  *Lee v.*

*McCue*, 410 F. Supp. 2d 221, 226 (S.D.N.Y. 2006), *appeal dismissed*, *Lee v. McCue*, 218 F. App'x 26, 27

(2d Cir. 2007) (emphasis in original) (quoting *Sheila C. v. Povich*, 781 N.Y.S.2d 342, 351 (1st Dep't

2004) (collecting cases)).  New York courts, accordingly, have dismissed NIED claims that are

duplicative of defamation claims, *Biehner v. City of New York*, No. 19-cv-9646 (JGK), 2021 WL

878476, at \*9 (S.D.N.Y. Mar. 9, 2021); *Cummings v. City of New York*, No. 19-cv-7723 (CM) (OTW),

2020 WL 882335, at \*27 (S.D.N.Y. Feb. 24, 2020), and abuse-of-process claims, *Baldini v. Shah*, No.

17-cv-8260 (AT) (JLC), 2018 WL 11226079, at \*7 (S.D.N.Y. Aug. 9, 2018).

Because Plaintiff's NIED claim is premised on the same allegations as her claims for defamation and abuse of process, her NIED claim must be dismissed.  *See Rodgers v. City of New York*, 966 N.Y.S.2d 466, 469 (2d Dep't 2013).  Plaintiff provides no additional allegations that would distinguish her NIED claim from her defamation and abuse-of-process claims.  Instead, she merely recites her allegations in support of her first three causes of action for defamation, FAC ¶¶ 430–31; *see id.* ¶¶ 332–97, and her fourth cause of action for abuse of process, *id.* ¶¶ 430, *see id.* ¶¶ 398–426. Plaintiff cannot make out a separate claim for NIED based on allegations that are "essentially duplicative" of her other "tort . . . causes of action."  *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021) (quotation omitted; collecting cases).  Because her claims for defamation and abuse-of-process are deficient, her claim for NIED is as well.  *See Wolkstein v. Morgenstern*, 713 N.Y.S.2d 171, 172 (1st Dep't 2000).

Moreover, in any event, Plaintiff's NIED claim fails because it is "premised on intentional conduct and not negligence."  *Santana v. Leith*, 985 N.Y.S.2d 147, 149 (2d Dep't 2014).  "A negligent infliction of emotional distress cause of action must fail where, as here, no allegations of negligence appear in the pleadings."  *Chiesa v. McGregor*, 176 N.Y.S.3d 687, 691 (2d Dep't 2022) (quotation omitted).  "New York courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."  *Lally v. Klick USA, Inc.*, No. 23-cv-10293 (MKV), 2025 WL 786576, at *7 (S.D.N.Y. Mar. 11, 2025); *Schmidt v. Bishop,* 779 F. Supp. 321, 324–25 (S.D.N.Y. 1991) (collecting cases).  Plaintiff's NIED claim relies exclusively on allegations of defamation and abuse of process—both intentional torts, premised entirely on intentional conduct.  This, too, requires dismissal of Plaintiff's claim for NIED.  *See Lally*, 2025 WL 786576, at *7 (collecting cases).

### G.  Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff's claim for IIED, like her claim for NIED, is premised on the same alleged conduct that grounds her claims for defamation and abuse of process.  FAC ¶¶ 436–442.  Because her IIED

claim "rel[ies] on the same underlying facts" as her other tort claims, it must be dismissed. *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023); *see also, e.g., Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 24 (1st Dep't 2024) (dismissing IIED and NIED claims as "duplicative of [plaintiff's] defamation claims").

In any event, Plaintiff's IIED claim fails because Defendants' alleged conduct does not meet "the high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (quotation omitted). To state a claim for IIED under New York law, a plaintiff must plausibly allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quotation omitted). The requirements for pleading IIED "are rigorous, and difficult to satisfy." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement (Second) of Torts § 46, comment *d*). The New York Court of Appeals once observed that, of the IIED claims it had considered, "every one ha[d] failed because the alleged conduct was not sufficiently outrageous." *Howell*, 81 N.Y.2d at 122 (collecting cases).

Plaintiff has not plausibly pleaded the kind of extreme and outrageous conduct that is required to sustain a claim for IIED. Plaintiff argues that she has alleged a "continuous pattern" of malicious "lawfare" and disparaging public commentary designed to intimidate and harass her since her termination in 2009, Opposition at 2, 24 (quoting *Freeman v. Jacobson*, No. 20-cv-10040 (SN), 2021 WL 3604754, at *10 (S.D.N.Y. Aug. 13, 2021)); FAC ¶¶ 6, 11, 44, but beneath its soaring

rhetoric, the FAC's "lawfare" allegations amount to a single action brought by MLA against Plaintiff in 2010, which culminated in a nearly $3 million judgment against her, FAC ¶ 280; State Court Judgment at 1, and years of subsequent attempts to secure repayment of the judgment, *see generally* Part III.D. The disparaging rhetoric Defendants are alleged to have publicized was largely incident to the parties' litigations, and in any event, was substantially true. *See generally* Parts III.A–C. Even accepting that Defendants' alleged "lawfare" and rhetoric were done maliciously and aggressively, *e.g.*, FAC ¶¶ 6, 11, 44, 293–97; *see also Mahn*, No. 653048/2014, Dkt. No. 156 at 3–4, such conduct does not rise to the level of outrageousness required to state a claim for IIED, *see Murphy*, 58 N.Y.2d at 303; *Conboy v. AT & T Corp.*, 241 F.3d 242, 258–59 (2d Cir. 2001) (dismissing IIED claim for failure to allege sufficiently outrageous conduct because "[p]laintiffs were not physically threatened, verbally abused, or publicly humiliated in any manner," and instead "were only harassed with numerous telephone calls from debt collectors"); *Segall v. Sanders*, 11 N.Y.S.3d 235, 236–37 (2d Dep't 2015) (dismissing IIED claim arising from "extremely acrimonious" litigation that involved "confrontations and police involvement" and allegedly defamatory communications to court and police); *Schottenstein v. Silverman*, 10 N.Y.S.3d 63, 64 (1st Dep't 2015) (dismissing IIED claim despite plausibly pleaded defamation claim).

IV.    **LEAVE TO AMEND**

Plaintiff is denied leave to amend her three claims for defamation and is granted leave to amend her claims for abuse of process, NIED, and IIED. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), "it is within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Motions for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory

motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

Any amendment of Plaintiff's claims for defamation would be futile. The Court has already had the opportunity to examine Defendants' statements in the Article, the Reply Brief, and the Adversary Complaint in their full contexts and has determined that they are not actionable. Accordingly, Plaintiff is denied leave to amend with respect to her defamation claims. *See Cassava Scis., Inc. v. Bredt*, No. 22-cv-9409 (GHW), 2024 WL 1347362, at *29 (S.D.N.Y. Mar. 28, 2024).

On the other hand, the Court cannot conclude that amendment of Plaintiff's claims for abuse of process, NIED, and IIED would be futile. This is the Court's first ruling on the sufficiency of Plaintiff's allegations in support of those claims. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Because Plaintiff has not yet had the opportunity to amend her complaint with the benefit of a ruling from the Court on her claims for abuse of process, NIED, and IIED, she is granted leave to file a second amended complaint to cure the deficiencies that this opinion has identified with those claims. Any amended complaint must be filed and served no later than 21 days from the date of this order.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss is GRANTED. The Clerk of Court

is directed to terminate the motion pending at Dkt. No. 31.

     SO ORDERED.

Dated:  May 24, 2025

                                  GREGORY H. WOODS
                             United States District Judge