```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                   :
SHARON MAHN,                                                       :
                                                                   :
                                      Plaintiff,                   :
                                                                   :
                     -against-                                    :
                                                                   :
ALLEGIS GROUP, INC., et al.,                                      :
                                                                   :
                                      Defendants.                  :
                                                                   :
----------------------------------------------------------------- X
```

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 12/22/2025 |

1:24-cv-8326-GHW

<u>MEMORANDUM
OPINION & ORDER</u>

GREGORY H. WOODS, United States District Judge:

### I.   INTRODUCTION

This action is the latest in a fifteen-year-long series of disputes between Plaintiff Sharon Mahn and Defendants Major, Lindsey, & Africa LLC ("MLA") and Allegis Group, Inc. ("Allegis," and together with MLA, "Defendants"). Plaintiff worked for MLA, a subsidiary of Allegis, as a legal recruiter until 2009, when MLA terminated her for allegedly misappropriating confidential information about MLA's clients and selling that information to its competitors. Plaintiff and MLA disputed the termination in various forums for the next nine years—culminating finally in a multi-million-dollar judgment against Plaintiff for misappropriation of MLA's confidential information and trade secrets.

For the next four years, the parties engaged in post-judgment-enforcement proceedings in New York state court. During those proceedings, Plaintiff petitioned for Chapter 7 bankruptcy. One year later, Plaintiff's bankruptcy trustee sued MLA and several of its employees in New York state court for an alleged sexual assault that occurred when Plaintiff was still working at MLA. MLA moved to compel the arbitration of those claims. That motion was granted and affirmed on appeal. And MLA filed an action in bankruptcy court to prevent the discharge of Plaintiff's debt to MLA in

bankruptcy under the original judgment against Plaintiff for her misappropriation of MLA's trade secrets. The bankruptcy court granted MLA's motion for summary judgment in part. Plaintiff has since appealed that decision, and that appeal remains pending.

Plaintiff subsequently initiated this action, asserting various tort claims against Defendants arising from Defendants' alleged "lawfare" and "weaponiz[ation] of the legal system itself," which allegedly occurred throughout the parties' various disputes. Defendants then moved to dismiss these claims under Fed. R. Civ. P. 12(b)(6). On May 24, 2025, the Court granted Defendants' motion to dismiss in its entirety—dismissing Plaintiff's defamation claims with prejudice and granting Plaintiff limited leave to amend her claims for abuse-of-process, negligent infliction of emotion distress ("NIED"), and intentional infliction of emotional distress ("IIED").

Following the Court's decision, Plaintiff filed a second amended complaint ("SAC"), which Defendants have again moved to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff's SAC spans 71 pages and includes 491 paragraphs. Yet, despite the length of Plaintiff's SAC, Plaintiff has failed to marshal any new facts sufficient to support her claims. Because Plaintiff's SAC fails to allege any new facts or make any new arguments that cure the deficiencies already identified by the Court in its May 24, 2025 opinion, Plaintiff's SAC fails to state a claim for abuse-of-process, NIED, or for IIED, and Defendants' motion to dismiss is GRANTED.

## II.    BACKGROUND[1]

### A.  Factual Background

At the outset, the Court notes that Plaintiff's SAC, Dkt. No. 45 ("SAC"), gives her first amended complaint a "face-lift"—the factual allegations in Plaintiff's SAC with respect to her three remaining tort claims for abuse-of-process, IIED, and NIED, are, aside from some minor cosmetic alterations, substantively identical to the factual allegations in her first amended complaint. *See generally* Dkt. No. 24 ("FAC").  Plaintiff's SAC omits some of the underlying litigation history and party information contained in her initial complaint—the omitted information is general background information that, while it would be helpful to the reader in framing Plaintiff's claims, ultimately does not support any of her claims.

Because Plaintiff's SAC alleges facts that are substantially identical to those alleged in her FAC, familiarity with the facts of this case is presumed.[2]  For context, the reader is referred to the Court's May 24, 2025 opinion, Dkt. No. 44 ("Op." or "Opinion"), which outlines the history of this dispute.  Given the substantial similarity between the FAC and the SAC, only a brief summary of the factual allegations in Plaintiff's SAC and this case's procedural history is provided here.

### B.  Procedural History

Plaintiff initiated this action on November 1, 2024.  Dkt. No. 1.  Plaintiff filed an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1) on January 10, 2025.  *See generally* FAC.  In her FAC,

---

[1] Generally, the facts are drawn from Plaintiff's Second Amended Complaint, Dkt. No. 45 ("SAC"), and are accepted as true for the purposes of this motion.  *See, e.g., Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to drawing facts from the SAC, the Court has drawn facts from public filings in the various other courts where the parties have litigated against each other, "not for the truth of the matters asserted in the other litigation[s], but rather to establish the fact of such litigation[s] and related filings." *Fecteau v. City of Mount Vernon*, No. 23-cv-9173 (KMK) (JCM), 2025 WL 754043, at *8 (S.D.N.Y. Mar. 10, 2025) (quotation omitted); accord *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

[2] In deciding Defendants' motion to dismiss, the Court relies solely on the factual allegations in the SAC.  However, the Court has included in this opinion some of the factual allegations from Plaintiff's FACs solely to provide context for the reader.

Plaintiff alleged six causes of action:  three for defamation; one for abuse-of-process based on Defendants' alleged "lawfare" during the various disputes between Plaintiff and MLA since her termination, Op. at 9 (citing FAC ¶¶ 398–426); one for NIED arising from Defendants' alleged "lawfare" and defamatory statements, *id.* (citing FAC ¶¶ 44, 427–35); and one for IIED arising from Defendants' alleged "lawfare" and defamatory statements, *id.* (citing FAC ¶¶ 44, 436–42).  On January 27, 2025, Defendants moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 31; Dkt. No. 32; Dkt. No. 33.  On March 13, 2025, Plaintiff filed an opposition to Defendants' motion to dismiss.  Dkt. No. 40.  Defendants replied on March 27, 2025.  Dkt. No. 41; Dkt. No. 42.

On May 24, 2025, the Court granted Defendants' motion to dismiss in its entirety.  *See generally* Op.  The Court dismissed Plaintiff's defamation claims with prejudice, concluding that "[a]ny amendment of Plaintiff's claims for defamation would be futile" because Defendants' alleged statements were "either substantially true, privileged from suit, or both."  *Id.* at 2, 35.  The Court dismissed Plaintiff's abuse-of-process claim without prejudice because Defendants only issued lawful writs for legitimate purposes.  *Id.*  And the Court dismissed Plaintiff's NIED and IIED claims without prejudice because those claims were predicated on the same non-actionable conduct as her other causes of action.[3]  *Id.* at 32.  The Court granted Plaintiff leave to amend her abuse-of-process, NIED, and IIED claims, affording Plaintiff an opportunity to potentially "cure the deficiencies" identified in the Court's Opinion.  *Id.* at 34–35.

On June 14, 2025, Plaintiff filed a second amended complaint—the operative complaint.  *See generally* SAC.  Plaintiff's SAC is functionally identical to her FAC—many of the allegations in her

---

[3] In that Opinion, the Court found that Plaintiff's NIED claim failed for an additional reason—"because it [was] 'premised on intentional conduct and not negligence.'"  Op. at 32 (quoting *Santana v. Leith*, 985 N.Y.S.2d 147, 149 (2d Dep't 2014)).  The Court noted that "New York courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."  *Id.* (internal quotation marks omitted) (quoting *Lally v. Klick USA, Inc.*, No. 23-cv-10293 (MKV), 2025 WL 786576, at *7 (S.D.N.Y. Mar. 11, 2025)).

SAC are indistinguishable from those in her FAC, and those that do differ, differ in style but not in substance. In her SAC, Plaintiff alleges three causes of action: one for abuse-of-process based on Defendants' alleged "fraudulent" accusations with respect to Plaintiff's "criminal conduct" allegedly made in unspecified[4] "submissions to this Court and others," SAC ¶¶ 443–65; one for NIED arising from Defendants' alleged "longstanding campaign of deliberate, systematic, and malicious harassment," *id.* ¶¶ 466–81; and one for IIED arising from Defendants' alleged "prolonged, deliberate campaign of legal and reputational terror." *id.* ¶¶ 482–91.

On July 21, 2025, Defendants moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's SAC should be dismissed because the SAC fails to allege any new facts and fails to correct the deficiencies identified by the Court in its Opinion. Dkt. No. 51 ("Mem."); Dkt. No. 52 ("Goldstein Decl.").

On August 4, 2025, Plaintiff filed an opposition to Defendants' motion to dismiss in which she argues that Defendants' pending motion "is the latest installment in a long-running playbook . . . [to] use [] litigation itself as an instrument of coercion and abuse." Dkt. No. 53 ("Opp'n") at 1. In her opposition, Plaintiff does not argue that her SAC has cured any of the

---

[4] Plaintiff identifies specific statements that Defendants allegedly made in support of her argument that Defendants are liable for abuse-of-process. Specifically, Plaintiff alleges that "[i]n at least four separate submissions to this Court and others, dated March 11, 2024; July 5, 2024; January 24, 2025; and January 27, 2025, Defendants asserted grave allegations about Ms. Mahn's supposed misconduct that were factually unsupportable, legally irrelevant, and materially unnecessary to the resolution of any issue." SAC ¶ 446. Plaintiff fails to allege in which submissions, or even in which court—given that the parties' various disputes have lasted over a decade and proceeded in various fora—Defendants allegedly made such "grave" and "factually unsupportable" statements. Plaintiff also alleges that Defendants "l[ied] about [her], attempting to shame her in public comments and silence her as the victim of a sexual assault." Opp'n at 8. With respect to Defendants' alleged attempts to "shame" Plaintiff, the Court believes that Plaintiff is referring to an American Lawyer article, which stated that Plaintiff "may be forced to repay the millions of dollars she stole from MLA and her colleagues." SAC ¶ 24; *see also* Op. at 6–7 (discussing the American Lawyer publication in detail when analyzing Ms. Mahn's now-dismissed defamation claims). And Plaintiff alleges that Defendants falsely asserted that she violated the Defend Trade Secrets Act and New York Penal Law § 155.05. SAC ¶¶ 55, 56, 57, 62, 63 ("[Defendants] asserted that [Plaintiff's] conduct . . . between 2005 and 2010 somehow violated the Defend Trade Secrets Act ('DTSA'), a statute not enacted until 2016 . . . [and] "invoke[ed] New York Penal Law § 155.05."). Again, Plaintiff fails to allege where Defendants allegedly made any such statements that she violated those specific statutes. The Court need not resolve this failure because, accepting that Defendants did make such statements, and accepting that Defendants made these statements in filings submitted to a court (or to a legal publication), any such statements cannot support a claim for abuse-of-process. As explained below, statements made in court filings are simply not "process" within the meaning of the tort.

deficiencies the Court identified in its earlier Opinion with respect to her abuse-of-process, NIED, or IIED claims.[5] Rather, Plaintiff apparently concedes that her SAC is materially indistinguishable from her FAC,[6] and "acknowledges the Court's prior dismissal," but she "respectfully disagrees with the factual and legal conclusions underlying that Order," instead seeking to "preserve those issues for appeal." *Id.* at 1–2. And, with respect to her claim for NIED, Plaintiff invokes Fed. R. Civ. P. 41(a)(1)(A)(i) to voluntarily dismiss that claim, arguing that "because Defendants have not filed either an answer or a motion for summary judgment, [she] is entitled to withdraw the claim unilaterally, as of right." *Id.* at 17. Plaintiff does not argue that her NIED claim is viable on the merits except with respect to the fourth element of that claim. *See generally, id.* On August 11, 2025,

---

[5] With respect to her abuse-of-process claim, Plaintiff argues that her SAC "specifically alleges [that] Defendants' motives in their cumulative efforts [were] to destroy Ms. Mahn, ruin her reputation, and humiliate her, all of which are improper collateral objectives." Opp'n at 11. Plaintiff contends that she has cured any deficiencies because her SAC now "pleads that Defendants [sic] conduct (and not the act of filing process) was abusive because the Defendants have a collateral objective" of humiliating Plaintiff, chilling her legal claims, and tarnishing her professional reputation. *Id.* at 12. These allegations do not meaningfully differ from Plaintiff's earlier allegations that Defendants' "sole purpose was to 'defame and harass her,'" which, standing alone, are insufficient to support a claim for abuse-of-process. Op. at 28 (quoting FAC ¶¶ 421–25). A "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (dismissing abuse-of-process claim where Plaintiff alleged "only that defendants acted maliciously" but did not allege an improper collateral objective).

[6] Plaintiff argues that her SAC differs from her FAC in one important respect because "[t]he full scope of [Defendants'] concealment was not discoverable until Defendants filed factual admissions in 2024 court filings, in which they explicitly disavowed any propriety or client relationship with job seekers, thereby admitting that their prior litigation posture was false." SAC ¶ 384; *see also* Opp'n at 4 (quoting the same). Plaintiff asserts that because [t]hese admissions categorically dismantle the factual foundation of [Defendants'] original claims," any "findings from the arbitration or court proceedings based upon those representations cannot now be credited by this Court." Opp'n at 4. It is well-settled that the Court cannot rely on any factual findings from the various fora in which the parties proceeded previously "for the truth of the matters asserted in the other litigation[s], but rather [only] to establish the fact of such litigation[s] and related filings." *Fecteau*, 2025 WL 754043, at *8 (quotation omitted); *accord Glob. Network Commc'ns, Inc.*, 458 F.3d at 157. Accordingly, any such factual admission by Defendants is not relevant to deciding Defendants' pending motion and the Court may not consider that admission for the "[un]truth" of the matters asserted in the other litigation[s]." *Fecteau*, 2025 WL 754043, at *8. And, as Defendants contend, "the Court did not rely on any prior decision in dismissing" Plaintiff's FAC, rather, in the prior Opinion, the Court made clear, as it does now, that it considered "filings in cases the parties have litigated against each other only for the fact that those cases occurred, *not* for the truth of the matter asserted in any such litigation" and that the Court would not give any preclusive effect to the arbitration award. Reply at 3 (citing Op. at 3 n.2, 4 n.3) (emphasis in Reply); *see also* Op. at 8n.7 ("The Court, again, ha considered the Reply Brief on this motion to determine what it stated and not for the truth of its contents."). Regardless, because the underlying dispute history between the parties forms the basis of Plaintiff's tort claims, the Court could not evaluate her claims on the merits without taking judicial notice of the fact that such prior litigation occurred. Op. at 4 n.3 ("Having determined that the Award is integral to the Amendment Complaint, the Court considers the Award, not for 'the truth of [its] contents,' but rather to 'determine what the [Award] stated.'" (alterations in Op.) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d. Cir. 2007)).

6

Defendants replied, largely reiterating the arguments made in their motion to dismiss. Dkt. No. 54 ("Reply").

### III.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft*, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). A document is considered "integral" to the complaint where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)

(emphasis omitted).  Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in the complaint or on which plaintiff relied in drafting the complaint).  "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it must be clear that "there exist no material disputed issues of fact regarding the relevance of the document."  *DiFolco*, 622 F.3d at 111 (quoting *Beer*, 463 F.3d at 134).

## IV.  DISCUSSION

Because the SAC fails to state a claim for many of the same reasons the Court identified in its first Opinion, readers of the Court's earlier Opinion will see that this opinion's language overlaps substantially with the language of the Court's previous decision.  First, Plaintiff's abuse-of-process claim fails because Defendants' conduct of which Plaintiff complains is not "process" and because Plaintiff does not allege that Defendants did anything beyond issuing lawful writs for legitimate purposes.  Next, Plaintiff's NIED claim fails because it is premised entirely on intentional, and not negligent, conduct.  And Plaintiff's IIED claim fails, as it did before, because Defendants' alleged conduct is not sufficiently outrageous and extreme and because it is duplicative of her other tort claims.  Accordingly, Defendants' motion to dismiss is granted.

### A.  Plaintiff Has Failed to State a Claim for Abuse-of-Process

Plaintiff's abuse-of-process claim fails for the same reasons the Court identified in its first Opinion—because she has not plausibly alleged that Defendants employed a legal process for an illegitimate purpose and because, with respect to her argument that Defendants are liable for abuse-of-process because they issued certain post-judgment writs, she has not alleged that Defendants' conduct was performed to obtain a collateral or improper objective.  To state a claim for abuse of process under New York law, a plaintiff must plausibly allege that the defendant "(1) employ[ed]

8

regularly issued legal process to compel performance or forbearance of some act[,] (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).[7]

Plaintiff cannot sustain her abuse-of-process claim because she has failed to allege that any of Defendants' alleged conduct constitutes "process." "Process" in the context of an abuse-of-process claim "is a direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act." *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969) (quotation omitted). "It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie." *Id.*; *accord Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). "The most common forms of such process are subpoenas, warrants, and writs of garnishment or attachment." Restatement (Third) of Torts: Liab. for Econ. Harm § 26 cmts. c (A.L.I. 2020).

---

[7] In reciting the elements for pleading an abuse-of-process claim, Plaintiff correctly quotes *Bright View Trading Co., Inc. v. Park*, No. 03 CIV. 2330 (HB), 2004 WL 2071976, at *6 (S.D.N.Y. Sept. 16, 2004) which states that the first element requires Plaintiff to plead sufficient facts to show: "regularly issued process, either civil or criminal." *See* Opp'n 2 at 7. The court in *Bright View* did not include the language "to compel performance or forbearance of some act" when stating the first element of an abuse-of-process claim. *Bright View* fails to include this language when reciting the elements for abuse-of-process not because that court held a different view of the substantive elements of the tort. Rather, *Bright View*'s omission of this language is a simple oversight caused by "citation telephone"— *Bright View* cites the elements as stated in *Curiano*, 63 N.Y.2d at 116. *Curiano* cites *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Association*, 38 N.Y.2d 397, 403 (1975), but only summarizes, and does not actually quote the elements as stated in *Farmingdale*—this was an oversight. In *Farmingdale*, the court stated that the first element of an abuse-of-process claim requires that a plaintiff show: "regularly issued process, civil or criminal, *compelling the performance or forbearance of some prescribed act*." *Id.* at 403 (emphasis added). The Second Circuit applies the elements as they are stated in *Farmingdale*. *Hernandez*, 939 F.3d at 204; *Savino*, 331 F.3d at 76; *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Plaintiff then proceeds to discuss the elements of an abuse-of-process claim according to *Farmingdale*. Opp'n 2 at 7. In so doing, Plaintiff misquotes *Farmingdale*. Plaintiff quotes *Farmingdale* as follows:

> In its broadest sense, abuse of process may be defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process. *In other words, the gist of the action for abuse of process lies in the improper use of process after it is issued.* To show that regular issued process was perverted to the accomplishment of an improper purpose *is enough*.

Opp'n at 7 (purporting to quote *Farmingdale*, 38 N.Y.2d at 400). The italicized language does not appear in *Farmingdale*. Counsel for Plaintiff is counseled that it is not proper to add or remove language from cited caselaw without indicating the modifications.

Plaintiff's argument that Defendants are liable for abuse-of-process because, as she alleges, "[t]he New York Action, the Adversary Proceeding, and this action are regularly issued civil process" which Defendants misused to "destroy" her both personally and professionally, is not persuasive. *Compare* SAC ¶ 444, *with* FAC ¶ 371 ("The New York Action and the Adversary Proceeding are regularly issued civil process."). However, "[u]nder New York law, . . . the mere 'institution of a civil action by summons and complaint is not legally considered process capable of being abused.'" *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (summary order) (quoting *Curiano*, 63 N.Y.2d at 116) (holding that "the District Court correctly dismissed the Amended Complaint insofar as it was predicated upon the filing of lawsuits [where] [t]he core of Plaintiffs' grievance is that Defendants filed and prosecuted a series of duplicative, frivolous, and malicious lawsuits aimed at harassing Plaintiffs and draining their resources"). The filing of a pleading, standing alone, does not compel any performance or forbearance of some act "because no such interference flows from the issuance of a civil summons. *Id.* Accordingly, "the commencement of a civil action cannot, by itself, support a plaintiff's claim for abuse of process, even when the civil action was 'intended to cause the plaintiff[] expense and to burden [the] [plaintiff] with the defense of a protracted legal proceeding."[8] *Id.* (quoting *Curiano*, 63 N.Y.2d at 116; then citing *Williams*, 23 N.Y.2d at 596).

Plaintiff also alleges that Defendants are liable for abuse-of-process because they "knowingly and maliciously misused legal filings,"[9] to "destroy" her personal and professional reputation, and

---

[8] "Given the disinclination of New York courts to say that the institution of a frivolous lawsuit is actionable as abuse of process," the Second Circuit has "declined to adopt [the] novel argument that [under New York law] the aggregation of such [frivolous] suits" could support an abuse-of-process claim. *Manhattan Enter. Grp. LLC*, 816 F. App'x at 514 (citation omitted) (summary order). Accordingly, Plaintiff has not adequately alleged an abuse-of-process claim simply because she argues that Defendants initiated and defended multiple, lawsuits in an alleged attempt to "destroy" Plaintiff.
[9] Plaintiff's argument that Defendants are liable for abuse-of-process because they allegedly made disparaging statements in a publication in the American Lawyer fails for the same reason—any such statements are not "process" within the meaning of this tort.

because they allegedly levied false accusations against her in certain filings,[10] including accusations that Plaintiff engaged in "criminal conduct."[11] SAC ¶¶ 445–47. But pleadings do not, by themselves, interfere with one's person or property, and accordingly, the filing of a pleading "is not legally considered process capable of being abused," as Plaintiff concedes.[12] *PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988) (quoting *Curiano*, 63 N.Y.2d at 116–17); *Bottone v. Roche*, No. 1:22-cv-10349, 2024 WL 869552, at \*5 (S.D.N.Y. Feb. 28, 2024) ("Plaintiff's abuse of process claim fails at the first element because . . . the filing of motions and a counterclaim in the underlying lawsuits [] is not legal process.").

And Plaintiff alleges that Defendants are liable for abuse-of-process because, during a deposition that occurred on February 22, 2021, Defendants allegedly made statements indicating that they may move for sanctions and introduced one of Plaintiff's public Facebook posts as an exhibit.[13] SAC ¶ 367. This allegation, too, is insufficient to support Plaintiff's abuse-of-process claim because while "depositions, subpoenas, and other tools of the discovery process . . . might form the basis of an action for abuse of process," statements made at a deposition are not process within the meaning of this tort. *Manhattan Enter. Grp. LLC*, 816 F. App'x at 515 (summary order). Any such statements by Defendants made during the deposition do not suffice to plead the first

---

[10] *See supra* note 4, which discusses the specific statements and certain, unspecified filings that Plaintiff identifies in support of her abuse-of-process claim.

[11] *Compare* Op. at 28 ("Plaintiff alleges that Defendants are liable for abuse of process because they levied 'false' and 'malicious[]' accusations at her in the Reply Brief and Adversary Complaint, FAC ¶ 416, but those allegations do not suffice to plead the first element of an abuse-of-process claim—that Defendants 'issued legal process *to compel performance or forbearance of some act.*' *Teddy Volkswagen of the Bronx, LLC v. Demersky*, No. 19-cv-2337 (AJN), 2020 WL 6424115, at \*2 (S.D.N.Y. Nov. 1, 2020) (emphasis in original, quotation omitted)").

[12] Plaintiff concedes that she cannot sustain an abuse-of-process claim based on "the filing of any pleading or memorandum of law or the adversary proceeding." Opp'n at 11. Yet, Plaintiff asserts that "[t]he relative [sic] 'process' refers to the pleadings, filings, notice of deposition, subpoenas, and pattern of litigation conduct, etc." and that the "'abuse' is the abuse of these processes by Defendants." *Id.*

[13] Plaintiff alleges that Defendants "used Ms. Mahn's personal Facebook post as an exhibit" to harass and intimidate her. *Compare* SAC ¶¶ 364–67, *with* FAC ¶¶ 42, 125, 294, 305, 313–314, 430, 441, 316–319 (making same allegations of Defendants' deposition conduct). As Defendants correctly argue, "[m]onitoring the social media posts of one's litigation adversary is commonplace today," particularly so in advance of a planned deposition, "and plainly does not give rise to an abuse of process claim." Reply at 8.

11

element of an abuse-of-process claim—that Defendants "issued legal process *to compel performance or forbearance of some act*." *Teddy Volkswagen of the Bronx, LLC*, 2020 WL 6424115, at *2 (emphasis in original, quotation omitted).

The Court accepts Plaintiff's allegations that Defendants made false and malicious accusations in various filings and during a particular deposition, SAC ¶¶ 367, 446–48, and that Defendants' sole purpose in making those statements was to ensure Plaintiff's "reputational and economic destruction," *id.* ¶¶ 421–25.[14] Even so, Plaintiff has merely identified statements Defendants made in a brief responding to a suit that Plaintiff herself initiated, during a deposition, and in a pleading "institut[ing] a civil action." *PSI Metals*, 839 F.2d at 43 (quotation omitted). It is not enough to allege, as Plaintiff has, that Defendants' statements were made with a "malicious motive." *Curiano*, 63 N.Y.2d at 117 (dismissing abuse-of-process claim where plaintiff alleged "only that defendants acted maliciously in bringing [an] action" because "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process").

Defendants are not alleged, merely by virtue of making those statements, to have made use of a process to interfere with Plaintiff's "person or property." *Williams*, 23 N.Y.2d at 596; *see also Joseph v. Joseph*, 967 N.Y.S.2d 324, 325 (1st Dep't 2013). Defendants' alleged statements[15] and the initiation of the arbitration proceeding simply cannot, by themselves, give rise to a cause of action for abuse of process.[16] *See Williams*, 23 N.Y.2d at 596; *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 107

---

[14] *Compare with* Op. at 28 ("Even accepting Plaintiff's allegations that Defendants made false and malicious accusations in the Reply Brief and Adversary Complaint, FAC ¶¶ 414–16, and that Defendants' sole purpose in making those statements was to 'defame and harass' her, *id.* ¶¶ 421–25, Plaintiff has merely identified statements MLA made in a brief responding to a suit that Plaintiff herself initiated (the Reply Brief) and in a pleading 'institut[ing] a civil action' (the Adversary Complaint).").

[15] With respect to Plaintiff's argument that Defendants are liable for abuse-of-process because of statements made during a deposition, Plaintiff asserts that Defendants' purpose was to turn the deposition "into an intimidation session" and to "signal[] . . . legal retaliation." Opp'n at 7–8. Again, while this may suffice to show motive, Plaintiff fails to allege that Defendant used that deposition to do anything other than achieve its legitimate objective of taking a deposition.

[16] Abuse-of-process is an independent tort and not a remedy for difficult litigation. *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 107 (S.D.N.Y. 2020) (dismissing abuse-of-process claim predicated on false statements made in pleading, noting that "[t]he defense to purportedly frivolous litigation is generally to prevail in that litigation, not to seek a state-law tort remedy" (quoting *Teddy Volkswagen*, 2020 WL 6424115, at *2)).

(S.D.N.Y. 2020) (dismissing abuse-of-process claim predicated on false statements made in pleading, noting that "[t]he defense to purportedly frivolous litigation is generally to prevail in that litigation, not to seek a state-law tort remedy" (quoting *Teddy Volkswagen*, 2020 WL 6424115, at *2)).

Finally, Plaintiff alleges that, following the affirmance of the state court judgment against her,[17] MLA issued several subpoenas to Plaintiff, her employer, and her father, SAC ¶¶ 327–35, and issued a Property Execution to the Sheriff of New York County against certain of Plaintiff's financial accounts, *id.* ¶¶ 336–38, all as part of Defendants' "crusade to crush" Plaintiff, *id.* ¶ 339.[18] Plaintiff alleges that "Defendants [] sought to humiliate, harass, attempt to discredit her, and punish her and shut her up." *Id.* ¶¶ 252, 445 (alleging that Defendants sought "to achieve a collateral objective:  to destroy Plaintiff Sharon Mahn's professional reputation, deter her from asserting legal claims, and inflict personal and professional harm").  The issuance of subpoenas and writs does compel performance of an act and accordingly does constitute "process" within the meaning of the tort.  That said, these allegations are not sufficient to support Plaintiff's claim that Defendants are liable for abuse-of-process because, accepting that such subpoenas and writs constitute "process," they merely allege that MLA "acted with an improper *motive*," but they do not allege that MLA "had an ulterior *purpose* or *objective*" in issuing the writs beyond obtaining repayment of the state court judgment against her.  *Savino*, 331 F.3d at 78 (emphases in original).

Here, Plaintiff alleges that Defendants issued the post-judgment writs with an improper motive, but she does not allege that Defendants had an improper purpose—"[t]he process of law must be used improperly and this means something more than a proper use from a bad motive."[19]

---

[17] On June 19, 2015, the state court issued an order denying Plaintiff's petition to vacate the arbitration award against her with respect to Plaintiff's alleged misappropriation of Defendants' property information and granting MLA's cross-petition to confirm it.  *Mahn*, Index No. 653048/2014, Dkt. No. 60 at 1 (the "State Court Judgment").  The Court takes judicial notice of this order, not for the truth of the matters asserted in the order, but to establish the fact of its issuance. *Fecteau*, 2025 WL 754043, at *8 (quotation omitted).

[18] *Compare with* Op. at 30.

[19] The New York Court of Appeals illustrated the distinction between "motive" and "purpose" by way of "concrete example":

*Hauser v. Bartow*, 273 N.Y. 370, 374 (1937).  Under New York law, "[i]t is not enough that the [defendant] have an ulterior motive in using the process of the court."  *Id.* ("Every one has a right to use the machinery of the law, and bad motive does not defeat that right. . . .  If [a defendant] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process.").  Rather, a defendant must commit some "further act done outside the use of the process—a perversion of the process."  *Id.*; *Dean v. Kochendorfer*, 237 N.Y. 384, 390 (1924) ("To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough.").  A defendant must do "something in the use of the process outside of the purpose for which it was intended"—"not to effect its proper function, but to accomplish through it some collateral object."  *Id.*

Plaintiff fails to allege that Defendants acted with an improper purpose in issuing the post-judgment writs and subpoenas.  Defendants merely "use[d] the particular machinery of the law for the immediate purpose for which it was intended . . . notwithstanding a vicious or vindictive motive."  *Hauser*, 273 N.Y. at 374.  As a general matter, parties are "absolutely entitled" under New York law to issue subpoenas and other writs in pursuit of "post-judgment discovery as part of [their] effort to collect [a] judgment."  *Mahn*, No. 653048/2014, Dkt. No. 156 at 3–4;[20] *see Zappin v. Comfort*, No. 18-cv-01693 (ALC) (OTW), 2022 WL 6241248, at *12–13 (S.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022) (dismissing abuse-of-process

---

> If one resorts to legal process to have another declared incompetent, and uses it for that purpose, he
> does not commit the wrong, though he may be guilty of another wrong, no matter what his motives,
> hopes, or expectations may be.  But if he makes use of that process not for the purpose of attaining
> its proper end, but to extort money, or to coerce action, that is a perversion of process.

*Hauser v. Bartow*, 273 N.Y. at 374.

[20] On June 30, 2022, the Supreme Court for the State of New York, New York County, issued an order finding that MLA's post-judgment writs were "reasonable" and declining to grant Plaintiff's motion for a protective order.  *Mahn*, No. 653048/2014, Dkt. No. 156 at 3–4.  The Court takes judicial notice of this order, not for the truth of the matters asserted in the New York Supreme Court's order, but to establish the fact of its issuance.  *Fecteau*, 2025 WL 754043, at *8 (quotation omitted).

claim predicated on post-judgment fee subpoenas and proceedings for, among other things, failure to allege improper purpose). Because the post-judgment writs are not alleged to have been issued for a collateral purpose beyond or in addition to their legitimate ends of enforcing the state court judgment against Plaintiff, they do not support a claim for abuse-of-process. *See Savino*, 331 F.3d at 78; *Zappin*, 2022 WL 6241248, at *12–13; *see also Silver v. Kuehbeck*, 217 Fed. Appx. 18, 21 (2d. Cir. 2007) (summary order) ("[T]he falsity of the allegations and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process where the process was both issued and used for its intended purpose." (internal citations and quotations omitted)); *Hauser*, 273 N.Y. at 374 ("If [a defendant] makes use of that process not for the purpose of attaining its proper end . . . that is a perversion of process."). Accordingly, the SAC fails to state a claim for abuse-of-process and the Court dismisses this claim.

### B. Plaintiff Has Failed to State a Claim for Negligent Infliction of Emotional Distress

At the outset, the Court notes that, in her opposition, Plaintiff does not oppose Defendants' arguments that her NIED claim should be dismissed on the merits except with respect to the fourth element.[21] Opp'n at 17. Instead, Plaintiff invokes Fed. R. Civ. P. 41(a)(1)(A)(i), arguing that because Defendants "have not filed either an answer or a motion for summary judgment, [she] is entitled to withdraw the claim unilaterally, as of right."[22] By choosing not to oppose Defendants' arguments in

---

[21] Plaintiff asserts that the "crutch [sic] of the dispute on the NIED claim is whether Ms. Mahn has satisfied the guarantee of genuineness of the harm," and notes that the Court did not address this element in its earlier Opinion nor did the Court address what Plaintiff purports is "an apparent conflict" amongst courts in this District "as to what is, and what is not required, to be pled to state a viable claim" for NIED. Opp'n at 16. The Court notes that the elements for pleading an NIED claim are well-settled, and that while courts in this District have reached different conclusions, depending on the particular factual allegations in a given case, as to whether a plaintiff has plausibly stated an NIED claim, there is no conflict as to the elements for stating such a claim in the cases Plaintiff cites. Regardless, because the Court concludes that Plaintiff's NIED claim fails for the alternative reason that it is premised on intentional, rather than negligent, conduct, the Court need not analyze the fourth element in this case. And Plaintiff does not address Defendants' arguments as to any other element for pleading an NIED claim.

[22] "Defendants do not oppose Plaintiff's withdrawal of her NIED claim," except that Defendants argue that any dismissal of "Plaintiff's claim should be *with prejudice*." Reply at 10 (emphasis in original). Defendants assert that "the Court should not leave the door open for Plaintiff to reassert this claim 'in the future'" because she has "failed to plead a proper NIED multiple times now." *Id.* (quoting Opp'n at 17).

support of dismissal on the merits, Plaintiff has conceded she has no argument in response with respect to the other elements for pleading her NIED claim. And Plaintiff's invocation of Fed. R. Civ. P. 41(a)(1)(A)(i) is not effective to unilaterally voluntarily dismiss her NIED claim because she seeks dismissal of only one cause of action rather than her entire action. *Id.* Plaintiff invokes the wrong rule—Fed. R. Civ. P. 41(a)(1)(A)(i) applies to actions and not to individual claims.

Under Fed. R. Civ. P. 41(a)(1)(A)(i), "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). As the plain text of the rule makes clear, "Rule 41(a)1 provides for the voluntary dismissal of an 'action' not a 'claim.'" An "'action' . . . denotes the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of action.'" *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir. 1953). Accordingly, Plaintiff cannot unilaterally dismiss her claim under Fed. R. Civ. P. 41(a)(1)(A)(i), and the Court will address Plaintiff's NIED claim on the merits.

Plaintiff's NIED claim fails on the merits because it is "premised on intentional conduct and not negligence," Op. at 32 (citing *Santana*, 985 N.Y.S.2d at 149)—namely, Plaintiffs' allegations that Defendants engaged in a "longstanding campaign of *deliberate*,[23] systematic, and malicious harassment," SAC ¶ 467 (emphasis added). "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).

---

[23] Deliberate, as an adjective, means conduct that is "characterized by or resulting from careful and thorough consideration," or "characterized by awareness of the consequences," definitions which track with allegations of intentional, and not negligent conduct. *Deliberate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/deliberate (last visited Dec. 17, 2025).

Plaintiff concedes that "Defendants' actions likely rise to the level of intentional torts," but "pleads this cause of action to preserve her right to recover under a theory of negligence as well." SAC ¶¶ 479. "A negligent infliction of emotional distress cause of action must fail where, as here, no allegations of negligence appear in the pleadings." *Chiesa v. McGregor*, 176 N.Y.S.3d 687, 691 (2d Dep't 2022) (quotation omitted). "New York courts have rejected uniformly such attempts to transmogrify intentional torts into negligence." *Lally*, 2025 WL 786576, at *7; *Schmidt v. Bishop*, 779 F. Supp. 321, 324–25 (S.D.N.Y. 1991) (collecting cases). Plaintiff admits that her NIED claim is premised on six "deliberate acts" by Defendants. SAC ¶¶ 468 ("Defendants and their agents have engaged in a relentless, calculated campaign of reputational, legal, and economic harassment."), 473 ("Defendants and their agents inflicted emotional harm through a series of deliberate acts."), 477 ("Defendants intentionally . . . ."). The "calculated" and "deliberate acts" that Plaintiff's NIED claim relies on are the same allegations underlying her claim for abuse-of-process and for intentional infliction[24] of emotional distress—intentional torts, premised entirely on intentional conduct. SAC ¶ 473(a)–(f) (alleging that Defendants initiated "baseless" federal litigation and arbitration; "threaten[ed] to depose Ms. Mahn's elderly father; improperly issued post-judgment subpoenas and writs; threatened sanctions; and "[b]rand[ed] her publicly as a 'criminal,' a thief, and as having committed financial misconduct"). Accordingly, because Plaintiff's NIED claim alleges only intentional, and not negligent conduct, the Court dismisses Plaintiff's NIED claim. *See Lally*, 2025 WL 786576, at *7 (collecting cases).

---

[24] *Compare* SAC ¶ 468 (asserting that Defendants are liable for NIED because "Defendants and their agents have engaged in a relentless, calculated campaign of reputational, legal, and economic harassment against Ms. Mahn, undertaken not to vindicate any legitimate legal interest but to punish, destabilize, and permanently injure her personal and professional standing "), *with* SAC ¶ 484 (asserting that Defendants are liable for IIED because "Defendants and their agents have orchestrated a deliberate campaign of legal and reputational terror, designed not to resolve any legitimate disputes, but to destroy Ms. Mahn personally, professionally, and financially").

17

### C. Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff's IIED claim fails[25] because Defendants' alleged conduct does not meet the "high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (quotation omitted). To state a claim for IIED under New York law, a plaintiff must plausibly allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quotation omitted). The requirements for pleading IIED "are rigorous, and difficult to satisfy." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement (Second) of Torts § 46, comment d). The New York Court of Appeals once observed that, of the IIED claims it had considered, "every one ha[d] failed because the alleged conduct was not sufficiently outrageous." *Howell*, 81 N.Y.2d at 122 (collecting cases).

Plaintiff has not plausibly pleaded the kind of extreme and outrageous conduct that is required to sustain a claim for IIED. Plaintiff argues that she has "state[d] a claim for intentional infliction of emotional distress" because she has alleged "a longstanding campaign of deliberate, systematic[,] and malicious harassment." Opp'n at 14; SAC ¶¶ 484–85 (alleging that Defendants'

---

[25] Plaintiff's claim for IIED is premised on the same alleged conduct that grounds her claims for NIED and abuse-of-process. *Compare* SAC ¶ 468, *with* SAC ¶ 484. Because her IIED claim "rel[ies] on the same underlying facts" as her other tort claims, it fails as it is duplicative. *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023); *see also, e.g.*, *Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 24 (1st Dep't 2024).

conduct included "meritless lawsuits, publicizing salacious and unprovable accusations, manipulating the legal process to freeze her assets, and falsely labeling her a criminal and a thief"). Beneath the SAC's rhetoric, Plaintiff's "lawfare" allegations arise from a single action brought by MLA against Plaintiff in 2010, which culminated in a multi-million-dollar judgment against her followed by years of subsequent attempts by Defendants to secure repayment of the judgment.[26]  Op. at 33—34.

Accepting that Defendants' alleged campaign of procedural harassment and rhetoric were done maliciously and aggressively, such conduct does not rise to the level of outrageousness required to state a claim for IIED.  *See Murphy*, 58 N.Y.2d at 303; *Conboy v. AT & T Corp.*, 241 F.3d 242, 258–59 (2d Cir. 2001) (dismissing IIED claim for failure to allege sufficiently outrageous conduct because "[p]laintiffs were not physically threatened, verbally abused, or publicly humiliated in any manner," and instead "were only harassed with numerous telephone calls from debt collectors"); *Segall v. Sanders*, 11 N.Y.S.3d 235, 236–37 (2d Dep't 2015) (dismissing IIED claim arising from "extremely acrimonious" litigation that involved "confrontations and police involvement" and allegedly defamatory communications to court and police); *Seltzer v. Bayer*, 272 A.D.2d 263 (1st Dep't 2000)[27] (dismissing IIED claim because defendant's conduct, which included dumping cement on plaintiff's sidewalk, tossing lighted cigarettes into plaintiff's backyard, and threatening to paint a swastika on plaintiff's house, was not "the kind of deliberate and malicious campaign of harassment or intimidation that can survive" under controlling precedent).  Because

---

[26] In its earlier Opinion the Court noted that "the disparaging rhetoric Defendants are alleged to have publicized was largely incidental to the parties' litigation, and in any event, was substantially true." Op. at 34.

[27] The court in *Seltzer* concluded that the alleged conduct was insufficiently outrageous to sustain an IIED claim. 272 A.D.2d at 263. Plaintiff purports to quote *Seltzer* in support of her argument that "*while individual acts by themselves may be insufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress, the claims that have succeeded* were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff." *See* Opp'n at 14 (emphasis added) (quoting 272 A.D.2d at 263). Although Plaintiff attributes this quote to *Seltzer*—the emphasized language does not appear anywhere in that decision. 272 A.D.2d at 263. The Court again advises counsel for Plaintiff that manufacturing caselaw, or language from cited caselaw, in her favor is not appropriate.

Plaintiff has not shown that Defendants' conduct meets the level of extreme and outrageous conduct required to sustain a claim of IIED, the Court dismisses Plaintiff's IIED claim.[28]

### D.  LEAVE TO AMEND

The Court denies Plaintiff leave to amend her claims for abuse-of-process, NIED, and IIED because any further amendment would be futile.  Ordinarily, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224– 25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).  "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

Here, the Court cannot conclude that any amendment could cure the deficiencies identified. Plaintiff has now had the opportunity to amend her complaint with respect to her claims for abuse-of-process, NIED, and IIED with the benefit of a ruling from the Court addressing those exact claims.  In its prior Opinion, the Court clearly identified the deficiencies with respect to Plaintiff's tort claims, and granted Plaintiff leave to amend to cure those defects.  As explained herein, Plaintiff has not cured those defects.  Rather, Plaintiff's claims fail now for the same reasons the Court

---

[28] Because Plaintiff has not met the extreme and outrageous element of the IIED cause of action, the Court need not address Defendants' alternative argument that Plaintiff's IIED claim is untimely.

identified in its prior Opinion, which Plaintiff concedes.  Opp'n at 1.  Indeed, Plaintiff concedes that her SAC is largely indistinguishable from her FAC.  *Id.* at 1–2.  And although Plaintiff "acknowledges the Court's prior dismissal," she "respectfully disagrees with the factual and legal conclusions underlying that Order," and seeks to "preserve those issues for appeal."  *Id.* at 1–2.  Accordingly, further amendment of Plaintiff's complaint would be futile, and the Court dismisses Plaintiff's tort claims with prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 50, to enter judgment in favor of Defendants on all counts, and to close this case.

SO ORDERED.

Dated: December 22, 2025

_____
GREGORY H. WOODS
United States District Judge